OLIVER (KING OF SPAIN v.). See Cases Nos. 7,812–7,814.

———

## Case No. 10,498.

OLIVER v. MUTUAL COMMERCIAL MARINE INS. CO.

[2 Curt. 277.] [1]

Circuit Court, D. Massachusetts. May Term. 1855.

MARINE INSURANCE — AGREEMENT FOR POLICY — REFORMATION IN EQUITY — POLICY TO AGENT "FOR WHOM IT CONCERNS"—MISTAKE — FRAUDULENT DESIGN.

1. If a policy, when drawn and received, does not correctly express a previously concluded agreement for insurance, which it was designed by both parties to execute, equity will reform it.

[Cited in Dean v. Equitable Fire Ins. Co., Case No. 3,705; Hearn v. Equitable Safety Ins. Co., Id. 6,300; Ivinson v. Hutton, 98 U. S. 83; Kountze v. Omaha, Case No. 7,928.]
[Cited in Glass v. Hulbert, 102 Mass. 34; Parkhurst v. Gloucester Ins. Co., 100 Mass. 303.]

2. If underwriters conclude an agreement for insurance with one known to them to be merely an agent, and nothing is said as to whose account the insurance is to be made, the agent has a right to a policy insuring him as agent, or for whom it concerns.

[Cited in Hill v. Millville M. M. & F. Ins. Co., 39 N. J. Eq. 75.]

———

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

3. If the agent makes a mistake in declaring the interest, equity requires it to be corrected, and the policy reformed.

4. There is a distinction between the correction of a mistake in a written contract, and in the execution of a power; in the latter case, courts interpose more willingly.

[Cited in Dinwiddie v. Self, 145 Ill. 306, 33 N. E. 895. Cited in brief in Walker v. Metropolitan Ins. Co., 56 Me. 374.]

5. But if the agent did not declare the interest in the wrong person by mistake, but through a fraudulent design, equity will not relieve the principal.

6. If a party fails, through mistake, to obtain such a policy as he is entitled to, by an existing valid contract, equity will relieve, though the mistake arose from ignorance of law.

[Cited in Sias v. Roger Williams Ins. Co., 8 Fed. 186; Bailey v. American Cent. Ins. Co., 13 Fed. 253.]
[Cited in Clayton v. Freet, 10 Ohio St. 545; Canedy v. Marcy, 79 Mass. [13 Gray] 377. Quoted in Palmer v. Hartford Fire Ins. Co., 54 Conn. 502, 9 Atl. 250.]

This bill was filed by Edward Oliver, an alien, against the Commercial Mutual Marine Insurance Company, a corporation created by a law of the state of Massachusetts, and established and doing business in that state, to have an alleged mistake corrected in a policy of insurance. The case being somewhat complicated in point of fact, the opinion of the court will be better understood by giving the substance of the bill and of the answer. The correspondence, and such of the evidence as was deemed material, are set forth in the opinion of the court.

The substance of the statements in the bill was as follows: "And thereupon, your orator complains and says, that, on the seventh day of November, eighteen hundred and fifty-one, he was the sole owner of a ship or vessel of the value of twenty thousand dollars, called the Liscard, then lying at Quebec, in the province of Lower Canada, and bound on a voyage from said Quebec to a port of discharge in said United Kingdom, on board which said ship there had been, and was then laden, a cargo of merchandise, the property of various persons other than your orator, and which said merchandise your orator had agreed should be conveyed in said ship from said Quebec, to said port of discharge, for a certain amount of hire or freight to be paid him by said parties respectively therefor, amounting in the whole, to the sum of nine thousand dollars. And your orator being desirous to procure said vessel and said freight to be insured for said voyage, at and from said Quebec to said port of discharge, namely, the said ship for the sum of ten thousand dollars, valued at twenty thousand dollars, and said freight for the sum of five thousand dollars, valued at nine thousand dollars, against the perils of the seas and other risks usually contained in marine policies of insurance on property of such description, did, in writing by letter, bearing date November seventh, eighteen hundred and fifty-one, request his agent, one James E. Oliver, of said Quebec,

to procure the same to be insured on account of your orator, and to have the policies of insurance thereon in the name of your orator, a copy of which letter, marked 'A,' your orator hereto annexes and prays that the same may be taken as part of this, his bill of complaint. And your orator further showeth unto your honors, that said James E. Oliver, afterwards on the ——— day of the same November, in compliance with the request of your orator, did, through one Henry McKay, of Montreal, broker, request one A. McLimont, of the city and state of New York, insurance broker, to procure said insurance upon said ship and said freight to be made and effected at some proper and solvent insurance company in said New York, or in Boston in said state of Massachusetts, and did cause to be transmitted to said A. McLimont, insurance broker as aforesaid, a copy of your orator's said letter, bearing date the said seventh day of November; and thereupon the said McLimont being unable to procure said insurance to be made and effected for a reasonable premium in said New York, did, in writing, authorize, and request one David R. McKay, of said Boston, commission merchant, to cause said insurance to be made and effected by some proper insurance company in said Boston, which said written request and authority so given by said McLimont to said McKay, was and is contained in two certain letters written by the said McLimont to the said McKay, one of which letters bears date the twenty-eighth day of this same November, and the other of said letters bears date the twenty-ninth day of the same November; and your orator hereto annexes copies of both said letters marked 'B' and 'C', and prays that the same may be taken as part of this, his bill of complaint. And your orator further shows, that in said letter of said McLimont, bearing date the twenty-eighth day of said November, by accident and mistake, the said McKay was directed to cause said ship to be insured for the sum of eight thousand dollars, to be valued at the sum of sixteen thousand dollars, and said freight to be insured for the sum of four thousand dollars, and to be valued at the sum of seven thousand two hundred dollars; and in and by said letter of said McLimont to said McKay, bearing date the said twenty-ninth day of November, said mistake was in part corrected, and said McKay was directed to insure said ship for the sum of ten thousand dollars and to insure said freight for the sum of five thousand dollars; but by accident and mistake the sum for which said ship and said freight were to be valued thereon was wholly omitted. And your orator further shows unto your honors, that the said McKay, after receiving said letters on the twenty-ninth day of said November, did apply to the said Commercial Mutual Marine Insurance Company to make insurance upon said ship and freight for your orators, according to the order and request of said McLimont, and did then and

there exhibit both said letters of said McLimont to said insurance company, with the intent to inform said insurance company as well of the relation of said McLimont as agent of the owners of said ship, as to enable them to determine the character of the risk to be insured; and said insurance company did thereafterwards read and examine said letters, and on the same day agree with said McKay, acting as the agent of your orator, to insure the said ship on the voyage aforesaid, at and from said Quebec, for the sum of ten thousand dollars, to be valued at the sum of twenty thousand dollars, and to insure the said freight of said ship on said voyage for the sum of five thousand dollars, to be valued at the sum of seven thousand two hundred dollars, and to receive as a premium therefor, the sum of eight hundred and twenty-five dollars. And your orator further shows unto your honors, that, thereafterwards, on the first day of December of the same year, the said insurance company, with the intent and design to carry into effect said agreement, did cause to be made a writing or policy of insurance, signed by the president and secretary, bearing date the said first day of December, a copy of which is hereto annexed, marked 'D', which your orator prays may be taken as part of this his bill of complaint, and did deliver said policy to said McKay, the agent of your orator, as aforesaid, and did receive from said McKay, the agent of your orator, said premium of eight hundred and twenty-five dollars, which sum was thereafterwards by your orator repaid to said McKay. And your orator further shows unto your honors, that, although when said insurance company had so agreed to insure said ship and freight for the amounts aforesaid, it was well known to said insurance company that said A. McLimont was merely the agent of the owner of said ship and of the person entitled to, and solely interested in said freight; and that he, said McLimont, had no insurable or other interest whatever in either said ship or said freight, and that said McLimont was, by profession and pursuit a mere insurance broker, and that he was acting as the agent of the person who owned said ship and who was solely interested in said freight, and yet by accident and mistake said insurance on said ship and said freight was, by the terms of said policy, declared to be on account of said A. McLimont, and without adding thereto the word agent or any other term indicating that he, the said McLimont, was insured as said agent of the party owning said ship and interested in said freight, and without the usual clause commonly inserted in such policies, that said insurance was effected for whom it might concern. And your orator further shows unto your honors, that said insurance company knew, and was distinctly informed by said McKay by said letter of said McLimont to said McKay, bearing date the said twenty-eighth day of November, and submitted to and read

by them as aforesaid, that said McLimont was the mere agent of, and broker for the owner of said ship, and had no interest whatever in said ship or freight except so far as he would be entitled to the usual commission of a broker for procuring said insurance; and that said insurance company did agree, consent, and understand at the time said agreement to insure said ship and freight was made with said McKay, and before said policy so made to carry said agreement into effect was written and signed, that said insurance was to be made for the benefit and on the account of the owner of said ship; and that said McLimont was not the owner of said ship nor interested therein or in said freight, and that by mere inadvertence, accident, and mistake in writing said policy of insurance, it was omitted to be inserted in said policy that said insurance was made on account of said McLimont as agent and for whom it might concern. And your orator further shows unto your honors, that said policy was received by said McKay and transmitted to the said James E. Oliver, the agent of your orator, and by him kept and retained in ignorance, that by the terms and legal effect thereof no other interest was insured thereby save that of the said McLimont, and in the full understanding as well by said McLimont, said McKay, and said Oliver, that the interest of your orator in said ship and freight to the extent of the sums named in said policy, was thereby insured and protected, in accordance with your orator's directions contained in his said letter to said James E. Oliver, bearing date the said seventh day of November. And your orator further shows unto your honors, that said ship Liscard, laden with goods to be carried on freight as aforesaid, sailed on the voyage described in said policy of insurance, on or about the nineteenth day of said November, and was in all respects at the inception of the risk described in said policy, tight, staunch, strong, and sea-worthy; and thereafterwards, while pursuing the voyage described in said policy, was, by the perils of the sea, on or about the third day of December, wholly broken, destroyed, sunk, and lost, and the whole of the cargo, so laden on board said ship, was by the same perils and at the same time, destroyed, sunk, and lost, by means of which the said freight so insured, as well as said ship, became and were wholly lost to your orator. And your orator submits to your honors, that, by reason of the premises, he is justly and equitably entitled to have said mistake so made in drawing said policy of insurance corrected, and said policy reformed by inserting therein that said insurance was made on account of A. McLimont as agent, or for whom it may concern; and that the sums so insured by said company on said ship and said freight, be paid to him accordingly. And your orator further shows unto your honors, that previously to this suit being commenced, on the

tenth day of February last past, and since, he applied to, and requested, and caused applications to be made to said insurance company to act toward your orator in such a way as is equitable and just, and to reform said policy as aforesaid, and to adjust and pay to him the sums so insured by them on said ship and said freight, and so lost to your orator as aforesaid by reason of the perils insured against in said policy, and exhibited to said insurance company the usual and proper proofs of said agency of said McLimont and of said loss and of his sole ownership of said ship and sole interest in said freight at the time of said agreement so made with the agent of your orator by said insurance company to insure the same as aforesaid, and your orator well hoped that said insurance company would have yielded to his said applications and paid to him the sums so insured by them and lost by him as aforesaid."

The substance of the answer was as follows: "That on or about the twenty-ninth day of November, in the year eighteen hundred and fifty-one, one David R. McKay applied at the office of this defendant in said Boston, for insurance on a certain vessel called the Liscard and her freight for the account of A. McLimont, and in pursuance of such application insurance was agreed to be made thereon, upon the terms and conditions set forth in a certain written policy of insurance, issued by this defendant and bearing date the first day of December, in the said last-mentioned year, a true copy of which policy except the indorsements thereon it is believed is annexed to said bill of complaint, but for greater certainty this defendant prays leave to refer to the original. This defendant denies that at or before the time when such application was made or when the agreement to insure was made, and when the said policy was issued, any communication was made to it or to its officers by the said David R. McKay or any other person, to the effect that the said McLimont was not the owner of said vessel or that the said insurance was effected by him as agent or for the account of any other person, but this defendant and its officers in receiving such application, making said agreement, and issuing said policy, acted under the full impression and belief that said McLimont was the owner of said vessel and of her freight, and that the said insurance was effected and intended to be for his sole account and benefit. This defendant denies that when the said application and agreement were made, and said policy was issued, the letters mentioned in the said bill of complaint or any or either of them were exhibited to this defendant or to any of its officers or were seen or read by them or any of them, or that the facts therein stated were disclosed to the defendant or any of its officers or the existence of any such letters known or suspected until after the said vessel was, as is alleged, lost. This defend-

ant denies, that when the said application and agreement were made and said policy issued, it was known to it or to any of its officers, that the said McLimont was an insurance broker by pursuit or occupation, or that any communication to that effect was made to it or them, or that there was any understanding to that effect; on the contrary this defendant and its officers did believe from the manner and form in which said application and agreement were made, that said McLimont was engaged in navigation, and was the owner of said vessel and her freight. This defendant saith, that in making the said policy, it did intend to fulfil the agreement for insurance made with said David R. McKay, and that the policy does contain the whole of the agreement made with him and conforms thereto in letter and in spirit. This defendant denies it to be true, that the president thereof has at any time declared, that at the time of making the said contract he knew that said McLimont was an agent or broker and not the owner of said vessel, or made any statement or declaration to that effect; or that when application was made to this defendant for payment of a loss claimed under the said policy. it ever promised to pay the same within the period of sixty days, as is alleged in said bill of complaint. This defendant saith, that up to the time when a claim was made for payment upon said policy, by reason of the alleged loss of said ship, this defendant and its officers had no knowledge, information, or belief, that any person other than said McLimont was an owner of or interested in the said vessel, or her freight, or the insurance thereon; that after such claim was made, it appeared on certain papers exhibited in part as proofs of said alleged loss, that the said McLimont was not an owner of or interested therein, that the said vessel and freight or some parts thereof were insured elsewhere by previous policies, which fact was not disclosed to this defendant or its officers, when the agreement for insurance was made, and further that the statements made, as to the alleged loss of said vessel, were not satisfactory to show that this defendant was legally or equitably bound to pay the same, if the said McLimont had been the owner thereof. This defendant denies that there is any error or mistake in said policy and insists that it does conform to the intentions of the parties between whom it was made, that the defendant was informed, if not in terms, yet by the manner and form in which application was made and the language used and believed, that the said McLimont was the owner of the said vessel and freight. that the said policy was made with intent to cover his interest as such, and not the interest of any other person. and was delivered to and accepted by said McKay as conforming to said application and agreement."

S. Bartlett and Mr. Thaxter, for complainants.

F. C. Loring, contra.

CURTIS, Circuit Justice. This is a suit in equity, the object of which is to correct an alleged mistake in a policy of insurance. On the 7th of November, 1851, the complainant, who is a merchant in Liverpool, being the owner of a vessel called the Liscard, ordered James E. Oliver, his agent at Quebec, to insure, in New York, at the best terms, two thousand pounds on the vessel, and one thousand pounds on her freight, by policies in the complainant's name. Other insurance on other vessels was ordered at the same time. James E. Oliver, through Henry McKay of Montreal, requested Andrew McLimont, an insurance agent in New York, to procure this and the other insurances. On the 28th of November, 1851, McLimont wrote by mail to D. R. McKay at Boston, as follows:

"New York, 28th November, 1851. D. R. McKay, Boston: My Dear Sir,—I am duly favored with yours of the 26th instant. Contents duly noted, also telegraph of this day's date; and I have advised you by same conveyance to insure in Coasters Mutual Company. I also transmit you the following order to insure:—

| | | | |
|---|---|---|---|
| On ship Liscard.... | $ 8.000 | valued at | $16.000 |
| On freight money.. | 4,000 | " " | 7,200 |
| On ship Wakefield. | 2,000 | " " | 11,200 |
| On freight money.. | 2,000 | " " | 6,000 |

$16,000 in all.

"The Liscard is a fine new ship three years old; her destination is Liverpool, and she sailed from Quebec on the 18th instant. The Wakefield is also a fine ship, eight years old; her destination is Greenock, Scotland. She sailed on the 17th instant. I trust you will get these risks done on moderate terms, but you are not limited to a rate. Do the best you can and lose no time. You will please take out special policies for these risks, and inclose them to me. paying cash for the premium, and drawing on me at one day's sight for the amount. You should get a discount of five per cent. on these premiums. I get it from the offices here, and I am told money is tight in Boston. In fact, you must do your very best to get that discount, as I allow it myself when rendering accounts. Now, as to the commission, all I charge is one fourth per cent. upon amount insured, which has to be divided between your brother and myself; but we always calculate on a handsome scrip dividend for these policies, therefore we shall divide commissions and scrip. I am likely to do a very large business with you, in this way, next year, (if we are both spared.) amounting, perhaps. to twenty thousand dollars of premiums, so that the scrip should be a handsome thing for both of us. I am in hopes of seeing you next month

on this subject. I have been thinking. that if you saw any safe chance of extending your business with the lower ports. we might make some mutual arrangements for our mutual benefit. I write this hurriedly, and conclude. Yours truly, A. McLimont."

Finding that mistakes had been made in the sums mentioned in this letter. Mr. McLimont sent by telegraph, a despatch mentioning the order for insurance. and correcting the mistakes therein. This despatch first arrived; and D. R. McKay went with it to the office of the defendants, and after some conversation with the president of the company, concluded to wait for the arrival of the letter. When that arrived, McKay again went to the office, saw the president, and concluded with him an agreement to effect the insurance ordered on the Liscard. The president wrote in a book of the company the following memorandum:

"December 1, 1851. Ship 'Liscard.' Quebec, Canada, to Liverpool, England. $10,000 on vessel valued at $20,000, and $5,000 on freight money valued at $7,200. 5½."

Before McKay left the office. he wrote and handed to the president or secretary, the following memorandum:

"A.

"Insure as follows:—

| | |
|---|---|
| $10,000 on ship Liscard. valued at | $20,(00. |
| 5,000 on freight of do. " " | 7,200. |

"Sailed from Quebec, Canada. for Liverpool, England, on the 18th November.

| | |
|---|---|
| "Also, $2,500 on ship Wakefield, valued at | $14,000. |
| 2,500 on freight of do. " " | 6,000. |

"Sailed from Quebec, for Greenock, Scotland, on the 17th November. D. R. McKay. Boston, December 1, 1851."

During the same forenoon a messenger from the office aplied to him to know the names of parties to be inserted in the policies, and thereupon he wrote and sent the following:

"B.

"Policies for D. R. McKay, on Liscard and Wakefield, to be made out on account of A. McLimont, and payable to him or order."

The policy in question was made and sent to McKay, purporting to "cause D. R. McKay, (a member of said company, pursuant to said act and by-laws,) on account of A. McLimont; loss payable to A. McLimont. Esq., him, or his order, to be insured, &c." It is alleged the vessel and freight were afterwards totally lost by a peril within the policy, the complainant being the sole owner thereof. The scope of the bill is, to reform the policy, so as to have it attach on the interest of the complainant, and to have a decree for the amount due. The complainant, through D. R. McKay. and the respondents through their president, made an agreement for insurance,

which preceded, in point of time. the writing of this policy; and which the policy was intended to imbody. If the policy. when drawn, did not correctly express a concluded agreement which had previously been made, which agreement, the policy was designed by both parties to carry into execution, equity will reform it.

In this case the most material inquiries are, at what point of time a concluded agreement was made. what it was, and what were the rights of the parties under it when the policy was made out. To a certain extent there is no conflict in the evidence upon these subjects. The president of the company, in his deposition, testifies that he made an agreement, and that he entered the substance of it on the books of the company, in the memorandum already given. In answer to the fifth and sixth cross-interrogatories, he says: "There was a written application made, before it was decided to write the risk, and I made a memorandum embracing the substance of the application, after it was decided to write the risk. I have given the memorandum I made, in the words in which it stands on the book of the company." Though it is disputed whether a written application was made, it is clear, beyond all doubt, that an application, either oral or written, was made, that it was assented to, and its substance recorded at the time by the president of the company in the memorandum already given. This memorandum ascertains the name of the vessel, the sum to be insured thereon, her valuation. the valuation of the freight, and the sum to be insured thereon, the voyage, and the premium. Here is every particular necessary to be fixed, in order to make a concluded agreement for a policy in the form and with the clauses usual at that office. The promisor was, of course, to be the insurance company; the promisee. D. R. McKay, with whom the contract had been made. So we must conclude both parties understood it; not only because when the policy was made out, McKay's name was inserted in the policy as the person insured. but also because, in the absence of any stipulation to the contrary, he who makes a proposal for insurance. or any thing else, which is accepted. is by implication, at least, taken to be the person contracted with, unless the contrary is made to appear.

Here, then, was a concluded agreement which embraced every essential stipulation to make a binding contract for a policy; and it covered every point necessary to be noticed. except two; the first being. a declaration of the interest, or account. upon which the insurance. when effected. was to attach. and the second, the person to whom the amount of any loss should be made payable. In respect to the last. in the absence of any direction to pay to another. the amount of any loss would be payable to the person who was insured. A failure to make

any agreement, or rather, I should say, the omission of the assured to give any direction on this subject, would not prevent the issuing of the policy. And it remains only to inquire, whether any thing was at that time agreed on, respecting the interest or account for which the insurance was made; and, if not, what were the rights of the parties in reference thereto. I am entirely satisfied that nothing was agreed on, or declared, on this subject, at the time the agreement for insurance was made. This results from the testimony both of D. R. McKay and the president, who are the only persons having knowledge of the subject, and also from the written memorandum made by both of them. The president testifies that he embraced in the written memorandum made by him in the books of the company, the substance of the proposal. That says nothing as to any interest or account. McKay says he wrote the paper A before he left the office. That is silent on this point. I am aware of the argument concerning the inference to be drawn from McLimont's letter and other circumstances. But the point at which I have now arrived, is this. When McKay left the office, an agreement for a policy had been concluded, and there was no declaration by him of the interest or account for which the insurance was effected. Had he, at that time, and before any thing more was done, a complete right to a policy, containing the elements which appear in the memorandum, wherein he should stand insured, as agent, or for whom it might concern? I am of opinion he had this right. Parties who contract for policies of insurance are not expected to insert in the contract every particular, needful to be inserted in the policy. The underwriters, on their part, agree to effect insurance; the numerous limitations of their liability as insurers, which appear in the different memorandums and other special printed clauses in the policy are not mentioned. Their obligation is understood to be, to make out a policy in the usual form, and containing the usual clauses, adapted to the case, made by the agreement of the parties. So if one applies for insurance, makes known that he is an agent only, and the company agrees to effect the insurance, or as the president of this company expresses it, to write the risk, it is a necessary implication that such words shall be inserted in the policy, as are usually inserted in such cases, and as are necessary to make a binding contract. It is to be presumed, that the underwriters intend to earn their premium, and therefore that they expect and desire that the insurance should attach upon some interest, and understand and agree, if a known agent applies for insurance, that the formula, usually inserted when an agent obtains insurance, and which is necessary to the assumption of the risk, shall be in the policy, when it is drawn. I think it may safely be laid down, that when a contract is made for a policy,

whatever clause is usually inserted in policies, by reason of a given state of facts, and which it is necessary to insert to adapt the policy to that state of facts, both parties will be understood as agreeing to have inserted, if they are both apprised of that state of facts, and contract in reference to it. That it is usual, and necessary, to insert in policies of insurance effected by agents in their own names, a declaration that they are insured as agents, or for whom it may concern, or some equivalent words, or to declare specially on whose account the insurance is made, will hardly be controverted. That it was known to both McKay and the president of the company, that he was acting as an agent merely, that he himself had no interest upon which the insurance could attach, and that when the company agreed to write the risk, they contracted to insure property which belonged to some principal of McKay, is admitted on all hands.

The result seems to me to be, that before McKay had sent his second memorandum (paper B) he had a complete right to a policy insuring him as agent, or for whom it might concern, or declaring specially his principal. In other words, I consider the right of McKay under this contract, to have been a right to a policy upon the Liscard and freight, on a voyage from Quebec to Liverpool, for the sums, and under the valuations, and at the rate of premium mentioned in the memorandum on the books of the company. And that as no declaration was made by McKay at the time the contract was made, respecting the interest upon which the insurance was to attach, he had the power, either to leave that point open in the policy, by having it made for whom it might concern, or to declare the interest, and have it inserted, in terms, in the policy. It was at this point, and in the exercise of this power, that the mistake was made. I do not consider it a broad question, whether a mistake was made in reducing to writing an oral contract for insurances, as it has been treated at the bar; but a much narrower question, whether a mistake was made, in the execution of a power belonging to one of the parties, to declare the interest upon which the insurance should attach. Such a mistake, when occurring in the execution of a similar power reserved in a policy, has been allowed to be corrected even at law. In Robinson v. Touray insurance was made on the 17th of July, at and from Archangel to Great Britain, on goods to be thereafter valued and declared. On the 16th of October, the brokers declared in writing, that the interest attached on goods on board two vessels named in the memorandum, and the underwriters put their initials to it. Subsequently, it was ascertained by the brokers, that their principals had no goods on board those vessels; and they called on the defendant to correct the mistake, and declared the insurance attached on goods on board the America. The defend-

ant refused to assent. Lord Ellenborough was of opinion that the declaration of interest did not require an assent on the part of the underwriter; that the contract was complete when the policy was signed; that the declaration of interest was merely the exercise of a power reserved to the assured; and if a blunder was made, it could be corrected. Of this opinion was the court of king's bench, when a rule to show cause was applied for. 3 Camp. 157; 1 Maule & S. 217.

To state fully and precisely the grounds upon which I think this case rests, I should say that when a complete contract for a policy, is made by a known agent, and nothing is said respecting any declaration of interest, the contract, is to insure the property of his principal, and in order that this contract may take effect, power is impliedly reserved to the agent specially to declare the interest upon which the insurance is to attach, and to have such declaration inserted in the policy, when drawn, or to have the policy drawn so as to insure him as agent, leaving the declaration of interest to be made afterwards, in case of loss. Either is within the known usage of agents and underwriters; and the conduct of the respondents in sending to McKay to obtain this declaration, and of McKay in making it, show, if any proof were needed, that it was understood by both, he possessed this power. And when a mistake was made in declaring the interest, it was, as Lord Ellenborough said, a mistake in executing a power reserved to the agent by a complete and binding contract, in which power the underwriter has no interest, save that it should be rightly executed, so that he may obtain the premium, and have a valid title to retain it, and over which he can, justly, exercise no control.

It will thus be perceived that the grounds on which I rest the decree in this case, are free from all doubt in point of fact. It is a point much contested, whether McKay showed to the president the letter of McLimont, and made him acquainted with its contents, so as to apprise him that McLimont was merely an agent. But however this may be, there is no doubt whatever, that the president knew, that McKay was acting as an agent, that the interest to be covered was not his, and that no agreement was made, when the contract for the policy was completed, and McKay left the office, to confine the insurance to the interest of any particular person, or in any way to restrain the power which belonged to the agent, rightly and truly to declare the interest, so as to make the insurance effectual, in behalf of his superior, whoever he might be. When the messenger of the defendants came to McKay afterwards, he was then, for the first time, called on to execute this power. That he knew McLimont was not the owner, and did not intend to cover his interest, but the interest of McLimont's principal, I cannot doubt. He made a blunder in declaring the

insurance to be for McLimont's account; and in my opinion, equity and good conscience require it to be corrected, and the policy reformed. That courts of equity possess the authority to correct mistakes in policies of insurance, even to the extent of changing the most material clauses therein, which are the subjects of special agreement in each case, has not been controverted, and is too well settled to admit of doubt. Motteux v. London Assur. Co., 1 Atk. 545; Collett v. Morrison, 12 Eng. Law & Eq. 171; Phenix Fire Ins. Co. v. Gurnee, 1 Paige, 278. It is to be done only with great caution, and upon such proof as is entirely satisfactory. But there is a considerable difference between the reformation of a written contract and the correction of mistakes in the execution of powers. In the latter class of cases, courts interfere much more readily, and upon the footing of presumed intention. 1 Story, Eq. Jur. §§ 169–179; 2 Sugd. Powers, 94; Ashhurst v. Mill, 7 Hare, 502. But I do not think it necessary in this case to press the power of the court at all beyond the narrowest limits which have been assigned for the correction of mistakes; because I proceed wholly upon evidence in which there is no conflict, and upon those rights and duties which are the legal results of the admitted relations of the parties, and of the contract evidenced by the written memoranda which preceded the policy.

It has been argued that McLimont was not authorized to procure insurance in Boston; nor in any name but that of the complainant; and that he and McKay intentionally departed from their instruction in this last particular, and had the policy made out insuring McKay on account of McLimont, so that they might share the scrip dividends made by this mutual insurance company, in fraud of the complainant. This requires examination. Not that I think it, of itself, important, that the agent deviated from his instructions, in the particulars mentioned; because a subsequent ratification by his principal, even after a loss, would remove the difficulty; Routh v. Thompson, 13 East, 274; Hagedorn v. Oliverson, 2 Maule & S. 485; and this bill of complaint itself affords the necessary evidence of ratification. Finney v. Fairhaven Ins. Co., 5 Metc. [Mass.] 192; Finney v. Bedford Commercial Ins. Co., 8 Metc. [Mass.] 350. Nor have these respondents anything to do with a fraud, practised, or attempted, by an agent of the complainant on him; that being, as to them, res inter alios. But the effect of these circumstances on the case, if any, arises from their bearing on the intent of McKay; and in this point of view, and upon the facts which clearly appear, the argument must be this: McLimont intended to obtain insurance for account of Oliver, the complainant; McKay intended to obtain it for McLimont's principal, not knowing who he was: but they desired to place them-

selves in a position in which they would have the benefit of the scrip dividends; and therefore, when McKay came to execute the power to declare the interest, he purposely, and not by any mistake, declared it in McLimont. If this were so, a court of equity could not treat an attempted fraud as an innocent mistake; and though the principal, in such a case, would be in no fault, it could not relieve him, but must leave him to his remedy against his agent. But this is a charge of meditated fraud; and it is incumbent on the respondents to make it out in proof. Primâ facie this is a case of mistake by McKay. For he was apprised, by McLimont's letter, that the insurance was not to be for his account. Indeed, the very ground taken by the respondents assumes this; for they say; he and McLimont, designed to get the scrip dividends to their own use, or that McKay designed to assist McLimont to do so, in fraud of his principal. If McKay knew McLimont had a principal, and that the insurance was meant to attach on the principal's property, and obtained a policy in such a form that it would not attach on the property of McLimont's principal, this departure, from the sole object of his agency, must either have been intentional, or unintentional; if the latter, it was a mistake; if the former, a fraud; and this is not to be presumed, but must be proved by the respondents who allege it.

Without going over the evidence in detail, it is sufficient to say, that I am not satisfied the insertion of McLimont's name, as the person for whose account the insurance was made, or the omission to add the words, as agent, or for whom it may concern, was intentionally done, for the purpose alleged by the respondents. In the first place, the only communication between McLimont and McKay, which could have led to this asserted fraudulent concert, is the letter of McLimont above copied; certainly this shows, clearly, an intention to take, to his own account, or to share with McKay, the scrip dividends, as part of the profits of the agency of obtaining insurance. Speaking in reference to one of these mutual insurance companies, I understand the scrip dividends to be, the evidences of that share of the profits of the company, during a fixed period, to which each person, obtaining insurance during that period, is entitled, under the charter and by-laws, in proportion to the amount of premium which he has contributed to the funds of the company. And if this be the correct view of it, I have no hesitation in saying that the principal who orders the insurance, and whose money pays the premium, on account of which the dividend of profits is made, is the party equitably entitled to those profits; and I should hesitate long before I sanctioned any usage, or allowed effect to any supposed consent of the principals, to permit the agents to take such profits to their own use. I do not say that it

would be impossible to make out such a usage, or to show a practice which would induce a legal conviction that the principal had consented to part with what justly belongs to him; I cannot express an opinion on that question till it is before me, with all the lights which belong to it. But in this case, and upon the facts now before me, there is no pretence for saying that these profits belonged to the agents; and any attempt on their part, secretly to appropriate them to their own use, would be a fraud on their principal. But though it does appear that McLimont probably intended to take the expected scrip dividend, if any, on account of this policy to his own use, or to share it with McKay, it does not appear that he intended to do it secretly, or otherwise than with the consent of his principal. Indeed it is difficult to perceive how he could have done so; for the policy was to go into the hands of the principal, and that must show him that the insurance was made by a mutual company, and how it was effected. Besides, there is no connection between the power over the scrip dividends, or the right to them, and the declaration that the insurance was for the account of McLimont. As appears from the testimony of the secretary of the company, McKay, who was insured, and thereby became a member of the company, was the person to whom the company would account for any such dividends, whether he declared the interest in McLimont, or the complainant.

It is further urged by the defendant's counsel, that McKay gave a direction in writing to have the policy made for account of McLimont; that the defendants assented, and made it so; that it is, therefore, in point of fact, just what the parties intended it should be; and if they, or one of them was mistaken in the legal effect of what they purposely did, equity will not relieve. It is true, as settled by the supreme court in Hunt v. Rousmanier, 1 Pet. [26 U. S.] 1, that the inquiry in all these cases must be, not how the parties intended, or expected, an instrument to operate, but what they intended it to be. But there is a wide distinction between a case where an instrument is, what the parties agreed it should be, but its legal effect is unexpected, and a case where an instrument was designed to carry into effect an existing binding agreement, but by mistake fails to do so. In the former case the party never had a right to anything more than he has got. He may be disappointed in finding that what he acquired was less valuable than he expected, but he acquired all he bargained for, and there is no ground upon which a court of equity can give him anything more. On the contrary, in the latter case, the party had a complete right, by an existing contract, to something which, by mistake, he has failed to get. And this contract, and the right under it, still subsists, in point of equity;

because, though the parties attempted to execute the contract, by mistake they failed to execute it; and therefore a court of equity interposes, and upon the footing of an existing contract, unexecuted, proceeds to put the party in that condition, to which his contract entitles him. And in this class of cases I apprehend it is wholly immaterial whether the party has failed to obtain that to which he was entiled through a mistake of fact or of law.

Suppose a contract in writing, for a valuable consideration, to convey a tract of land; and through mutual mistake of the law, some legal formality is omitted, which renders the deed inoperative. Inasmuch as a court of equity would have decreed specific performance of that contract if no deed at all had been given, so it will give effect to the contract by reforming an invalid deed. Findlay v. Hynde, 1 Pet. [26 U. S.] 241. In Hunt v. Rousmanier [supra], a position is laid down which precisely covers this point. "Where an instrument is drawn and executed, which professes, or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either of fact or law, does not fulfil, or violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement." Now here was a previous agreement to insure property of McKay's principal. The president of the company says he supposed McLimont to be that principal. If so, he was mistaken in point of fact; but his mistake is not important, because it was respecting a matter which was not a subject of stipulation between the parties, but only of the exercise of a power by one of them. McKay, either intended to have the secretary insert, after the words "for account of McLimont," the words "as agent," or "for whom it may concern," or he was ignorant that those words were necessary to make the policy an effectual execution of the contract to insure the property of his principal; in the last event it was a mistake of law by McKay, whereby he failed to obtain effectual insurance on the property of his principal, to which he was entitled, under his contract with the company; in the former event it was an omission, by the secretary, in consequence of ignorance of the fact that McLimont was an agent merely, which omission, McKay did not perceive, or have corrected at the time, and so the policy, as drawn, failed to execute the agreement.

My opinion is, that the complainant is entitled to a decree to reform the policy; but as the defendants contest their liability under the policy, when reformed, an issue must be put to the jury to find whether the defendants are liable for anything, and if so, for how much, under the policy as reformed.