## ESCH BROS. v. THE HOME INSURANCE COMPANY OF NEW YORK.

1. **Pleading**: ACTION AT LAW: CHANGE TO EQUITY BY AMENDMENT. Where an action at law was begun upon a policy of fire insurance, but the answer set up a good defense to the action at law, plaintiff was not estopped from so amending his petition as to state a cause of action in equity, though the grounds of his equitable action were known to him when he first began his action at law; for he could not know, until the answer was filed, that the defendant would insist on the defense to the action at law. (*Barnes v. Insurance Co.*, 75 Iowa, 11, *followed.*)

2. **Fire Insurance**: MORTGAGEE'S INTEREST: MISTAKE: REFORMATION: ESTOPPEL. Where a mortgagee of property applies to the agent of an insurance company for insurance alone upon his interest as mortgagee, and the application is accepted, and he requests the agent to write the policy so as to affect the desired purpose, and relies upon him to determine as to what form is necessary under the law of insurance for that purpose, and the agent, by a mistake of law, adopts the wrong form, a court of equity will, after loss, reform the policy so as to make it express the intention of the parties. (See opinion for authorities.) And in such case, where the agent had general authority to contract insurance, and received the consideration for the policy in question, which was passed to and held by the company, *held* that the company could not be heard to question the authority of its agent, on the ground that its rules forbade the issuance of policies to mortgagees.

3. ————: INTEREST OF ASSURED INCREASED: NO FORFEITURE. Where a mortgagee insured his interest in the mortgaged property, and afterwards, upon foreclosure, became the full owner of it, *held* that this was an increase of his interest, and was not a breach of that part of the policy which provided for a forfeiture in case of a change of title.

4. ———: CHANGED USE OF PREMISES: RISK NOT INCREASED. The policy in question was to be forfeited in case the use of the insured premises was so changed as to increase the risk. The agent who issued the policy testified that the risk necessarily incident to the kinds of business carried on was increased by the changed use of the premises, but that the moral risk was diminished by the change, and that the risk as a whole was improved. *Held* that the change in use was not such as to avoid the policy.

*Appeal from Jones District Court.*—HON. J. D. GIFFIN, Judge.

FILED, OCTOBER 7, 1889.

THIS action was originally brought at law by the plaintiffs, Esch Bros., to recover upon a policy of insurance against loss or damage by fire. The policy set out is as follows:

"In consideration of twenty dollars to them paid by the insured hereinbefore named, the receipt whereof is hereby acknowledged, do insure Bridget Donegan against loss or damage by fire and lightning to the amount of four hundred dollars, for one year, as follows: Four hundred dollars on the two-story frame building used as a restaurant and dwelling, situate on the south half of lot 448, in railroad addition to Monticello, Iowa. In case of loss under this policy, this insurance is made payable, first to Esch Bros., of Dyersville, Iowa, as their interest may appear. And the said Home Insurance Company hereby agree to make good unto the said assured, her executors, administrators and assigns all such immediate loss or damage, not exceeding in amount the sum or sums insured as above specified, nor the interest of the assured in the property, except as herein provided, as shall happen by fire and lightning to the property so specified from the fifteenth day of April, 1884, to the fifteenth day of April, 1885; the amount of loss to be estimated according to the actual cash value at the time of loss, and to be paid sixty days after notice and proofs of loss are received at the office of the company in New York. If the interest of the assured in the property be any other

than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, or if the building insured stands on leased ground, it must be so represented to the company, and so expressed in the written part of this policy; otherwise the policy shall be void. When property has been sold or delivered or otherwise disposed of, so that all interests or liability on the part of the assured herein named has ceased, this insurance on such property shall immediately terminate. In case the use or occupation of the above-mentioned premises at any time during the period for which this policy would otherwise continue in force shall be so changed as to increase the risk thereupon, except as may be hereinafter agreed to by this corporation in writing upon this policy, from thenceforth, so long as the same shall be so used, this policy shall be of no force or effect.

"J. W. WASHBURN, Secretary.

"CHAS. JUNITY, President.

"Countersigned at Monticello, this fifteenth day of April, 1884."

Plaintiffs, being ruled on defendant's motion to state what title or interest they and Bridget Donegan had at the time the policy was issued, and at the time of the loss under said policy, filed an amendment alleging that they had obtained a judgment of foreclosure May 8, 1883, against Bridget Donegan, the absolute owner of the premises, and that she continued as such owner until her title was divested by foreclosure; that the premises were sold to plaintiffs July 17, 1883, on execution, on which they obtained a sheriff's deed, July 17, 1884; that plaintiffs alone applied for the policy in suit, and paid the premium therefor, and at the time truly stated to defendant's agent, who had power to pass upon risks, collect premiums, make contracts of insurance and issue policies, the nature of the title to said premises, and that they alone wanted their interest in said premises insured, and that said Bridget Donegan would not redeem; that said agent informed

them that he could insure them for one year, notwithstanding Bridget Donegan did not redeem; that said agent then wrote up and countersigned and issued to plaintiffs said policy; that after they procured the sheriff's deed, and before the loss, they informed said agent that they had so procured it, and wanted to know if the policy should be changed, and were then informed by said agent that said policy insured their property. The defendant demurred, on the grounds that the plaintiffs were not proper parties,—not entitled to maintain suit on the policy set out; that it appeared from the petition, as amended, that prior to the loss the assured had alienated the property, and had no interest therein at the time of the loss,—which demurrer was sustained. Plaintiffs thereafter filed a substituted petition, which was stricken out on motion of defendant. Plaintiffs filed a second substituted petition, alleging that Bridget Donegan, having the legal title to the premises in question, executed to plaintiffs a mortgage thereon to secure the payment of a certain note for two hundred dollars, which mortgage provided that the mortgagor should keep the building insured for the benefit of the second party to the extent of their interest therein; that on May 8, 1883, they obtained a judgment on said note, and a decree of foreclosure, and afterwards purchased the property at sheriff's sale on execution issued on said decree; that T. W. and G. L. Lovell obtained a judgment of foreclosure against Bridget Donegan on a prior mortgage to that of plaintiffs, which judgment the plaintiffs purchased from said Lovells, April 15, 1884; that Bridget Donegan failed to keep said premises insured for the benefit of the plaintiffs; that on the fifteenth day of April, 1884, there was no insurance thereon, and said Bridget Donegan had failed to redeem from said sale to plaintiffs, or to pay said Lovells' judgment; that on the fifteenth day of April, 1884, plaintiffs applied to J. R. Stillman, a general agent of defendant, who had full power to execute and deliver policies of insurance, to insure their interest in the building on said premises in defendant company; that they fully

stated to said agent all the facts hereinbefore set forth, and advised him of their interest in said premises, and that the right to redeem from the foreclosure sale would expire on the second day of July, 1884, and that they were convinced that Bridget Donegan would not redeem, but that the title would, on the expiration of the time, vest in plaintiffs, and that they would then receive a sheriff's deed ; that they then stated to said agent that they desired to obtain insurance on their interest in the building for the sum of four hundred dollars for the term of one year for their sole and exclusive benefit; that said Bridget Donegan had nothing to do with procuring said insurance, had no interest therein, was not a party to said contract, which was well known to said agent; that said agent then and there stated to plaintiffs that such insurance could be effected in defendant company for one year for four hundred dollars, and the premium would be twenty dollars, and then and there offered for said consideration to insure plaintiffs' interest in said property, which offer the plaintiffs accepted, and paid said Stillman, as agent of defendant, twenty dollars of their own money, and directed said Stillman to issue such policy to plaintiffs in defendant company as would insure their interests in the property aforesaid for the sum of four hundred dollars, and for the term of one year, and said agent, for and in behalf of defendant, then and there agreed to issue such policy ; that pursuant to the agreement the policy was subsequently written out by said agent, and forwarded to plaintiffs ; that plaintiffs relied solely upon the judgment and knowledge of said agent to write the said policy correctly, and fully believed said policy insured their interest in the premises as agreed upon ; that Bridget Donegan failed to redeem from said sale, and a sheriff's deed was executed and delivered to plaintiffs, whereby they became vested of the absolute title, and notified defendant thereof through said agent, but defendant made no objection thereto, but by this said agent assured the plaintiffs that their policy remained in full force; that about the

fourth day of March, 1885, said property was totally consumed by fire ; that plaintiffs made proofs of said loss. and that they have suffered loss by reason of the destruction of said property by fire in the sum of four hundred dollars ; that the policy issued to them by the defendant does not set forth the contract made between the parties, in that said policy insures Bridget Donegan, instead of plaintiffs, nor does the policy state the character of plaintiffs' title or interest in said property ; wherefore the plaintiffs pray that said policy be so reformed as to express the contract of insurance so made in this : That it be so reformed as to insure the interests of plaintiffs alone in said property to the extent of four hundred dollars for the term of one year, and to insert the name of plaintiffs in the place of Bridget Donegan, and so that the same sets out the plaintiffs' title in said property, and that the plaintiffs have judgment upon said policy so reformed for four hundred dollars, with interest from April 5, 1885. The plaintiffs having filed this substituted petition, the case was, on their motion, transferred to equity ; and, the defendant having answered and the plaintiffs replied, the case was submitted to the court, and upon full hearing it was adjudged that the plaintiffs' petition be dismissed, and plaintiffs appeal. The points in controversy will appear without further statement as to the pleading.

*Utt Bros.,* for appellants.

*Cole, McVey & Clark,* for appellee.

GIVEN, C. J.—I. Following the order pursued in the argument, we first notice appellee's contention that

1. PLEADING: action at law: change to equity by amendment.

plaintiffs, having made sworn proofs of loss, and proceeded at law upon the policy, cannot now maintain this action in equity to reform the policy, and are estopped to deny the correctness of the contract as sued upon. Numerous authorities are cited to the effect that, where

a party has two inconsistent remedies, he is called upon to elect which he will pursue, and, having elected, he cannot, after defeat, pursue the other remedy. Such is not this case. The plaintiffs have but one remedy, and that is for the reformation of the policy. They have no remedy upon the policy as written. Their petition at law alleged the errors in the policy substantially as alleged in their petition in equity. This case seems to be exactly within the ruling in *Barnes v. Insurance Co.*, 75 Iowa, 11. In that case the action was commenced at law, and a recovery sought on the policy. The defendant pleaded that the policy contained a provision against additional insurance, and that defendant had procured additional insurance. The plaintiff amended, alleging that at the time the contract of insurance was entered into it was agreed that the plaintiff should have the right to take out additional insurance ; that such an agreement was omitted from the policy by mistake, oversight, or through the fault of the defendant, and asked a reformation of the policy. The defendant denied the allegation of the amended petition, and also pleaded that plaintiff, having knowledge of the matters pleaded, was estopped from setting the same up, because he had elected to prosecute an action at law on the policy, and, having made an election of remedies, he was bound thereby. The court says : "Conceding that plaintiff had knowledge of the fact that the defendant asserted it would rely on the defenses it did, still, we think he could bring an action at law on the policy, and ascertain certainly whether the defendant would plead such defense or not, before resorting to equity. He could not know what the defense would be before it was pleaded. Under the statute in relation to amendments, we have no hesitation in holding that the party is not estopped by bringing an action at law from amending his pleadings before the case has finally been submitted to the court, so as to change it into an action in equity. We feel confident the universal practice is in accord with this view." We think this case fully answers appellee's first contention, and the further claim

that the "amendment, as made by the second substi-
tuted petition, is a substantial change in the original
cause of action, and not authorized by the Code of
Iowa."

II.    The next and most important question is
whether the plaintiffs have shown themselves entitled
to have the policy of insurance so reformed
as to make it a contract insuring them to
the extent of their interest, not exceeding
four hundred dollars, instead of Bridget

2. FIRE insur-
ance: mort-
gagee's inter-
est: mistake:
reformation:
estoppel.

Donegan.   It is well established by the admissions in
the pleadings and by the proofs that the title to the
property insured was as alleged by the plaintiffs, both
at the time the policy was issued and at the time of the
loss ; that Bridget Donegan omitted to keep the prop-
erty insured ; that J. R. Stillman was agent of defend-
ant, with power to contract insurance of property, take
risks, collect premiums, and issue policies ; that plain-
tiffs applied to said agent to have their interest in said
property insured in the defendant company, and
explained to him fully what their interest was ; that
Stillman, as such agent, agreed to insure the plaintiffs
in the defendant company on their interest in said
property to the amount of four hundred dollars for one
year, for the consideration of twenty dollars, which was
then paid by the plaintiffs ; that it was left with Still-
man to write the policy accordingly, and that the policy
was written as set out by Stillman, and forwarded to
and received by the plaintiffs, with the understanding
and belief on the part of said Stillman, and the plain-
tiffs, that the policy so written did insure the plaintiffs,
as it was agreed it should.   There is no pretense that
Bridget Donegan ever sought, desired, knew of or paid
for the insurance.   The case is almost identical in its
facts with *Bailey v. Insurance Co.,* 13 Fed. Rep. 250,
and *Williams v. Insurance Co.,* 24 Fed. Rep. 625.   In
the former case, McCRARY, J., held :   "Where a
mortgagee applies to the agent of an insurance com-
pany, and states plainly he wishes to obtain insurance
alone upon his interest as mortgagee, requests the agent

to write the policy so as to effect this purpose, and relies upon him to determine as to what form is necessary under the law of insurance for that purpose, this court holds that the agent is bound to write a policy which shall insure the mortgagee's interest in his own name. I regard it as well settled by authority, and well supported by reason, that if the applicant correctly states his interests, and distinctly asks for an insurance thereon, and the agent of the insurer agrees to comply with his requests, and assumes to decide upon the form of the policy to be written for that purpose, and by mistake of law adopts the wrong form, a court of equity will reform the instrument so as to make it insurance upon the interests named. Such a determination is eminently just and equitable, since the insurance company always prepares the contracts and inserts therein its own terms." In the latter case, Justice MILLER announced the rule to be that "where an instrument fails to represent what both parties intended to have it represent, and one party has drawn up the instrument and the other party merely accepted it, and the fault was on the part of the party drawing up the instrument, it can be reformed. It would be a harsh rule if a person applying to an insurance agent, who is supposed to know the legal value of the language used in such policies, which he is drawing up every day, and who is supposed to know exactly what is desired, if that agent fails to do that which was intended, it would be harsh to say that the instrument shall not be reformed, and that chancery shall not give relief." The right of the plaintiffs to a reformation of the policy upon the facts is fully supported in *Fink v. Insurance Co.*, 24 Fed. Rep. 318, and in *Longhurst v. Insurance Co.*, 19 Iowa, 364, and many other authorities that might be cited. It is urged that the rules of the defendant company forbid the issuing of policies to mortgagees, but require their issue to mortgagors. That the plaintiffs had an insurable interest is not questioned; nor that the company could contract to insure such interest. The agent Stillman had general authority to contract insurance,

and did contract to insure the plaintiffs' interest, and receive the consideration therefor, which passed to, and is still held by, his principal. We think the defendant should not be heard to question the authority of its agents under these circumstances. We are of the opinion from the facts that the contract was to insure the plaintiffs, and not Bridget Donegan, and that by a mistake of law on the part of the defendant's agent the policy was made to insure Bridget Donegan instead of the plaintiffs, and should be so reformed as to run to the plaintiffs as the insured to the extent of their interest at the time the policy was issued, not exceeding four hundred dollars.

III.    It remains to be determined whether the policy, as reformed, has been broken by reason of the change in title, resulting from Bridget Donegan's failure to redeem. This was not a diminution of the interests of the assured, but an increase, and hence not a breach of the policy. See *Bailey v. Insurance Co., supra,* and authorities cited therein.

3. ——: interest of assured increased: no forfeiture.

IV.    It appears by the testimony that at the time the policy was issued the premises were occupied as a restaurant and dwelling, and at the time of the loss it was being occupied as a wagon and paint shop. The policy provides that "in case use or occupation of the above-mentioned premises at any time during the period for which this policy would otherwise continue in force shall be so changed as to increase the risk thereon, except as may be hereinafter agreed to by this corporation, in writing upon this policy, from thenceforth, so long as the same shall be so used, this policy shall be of no force or effect." This provision is against changes that "increase the risk." Mr. Stillman, who was entirely familiar with both occupations, and with the classifications of risks, testifies : "The occupation of this building was changed, after the policy was issued and before the fire, from restaurant to wagon and paint shop. But I did not think the change increased the risk enough to

4. ——: changed use of premises: risk not increased.

increase the rate. The rate was high in the first place. I did not think the change here did increase the hazard. It was kept as a low dive before. I think the risk was improved. Without regard to moral hazard, a wagon and paint shop is a greater risk; but, because of a moral hazard, I did not think the risk was increased."

V. It appears that the loss was total, and that the plaintiffs were damaged thereby, to the fullest amount of their insurance, four hundred dollars, which became due and payable to them on the fifth day of April, 1885. The judgment of the district court dismissing the plaintiffs' petition is reversed, and decree will be entered in this court reforming the policy of insurance as prayed for, with judgment in favor of the plaintiffs for four hundred dollars, with six per cent. interest from the fifth day of April, 1885, and for costs.

REVERSED.