## SOUTHERN SURETY CO. v. RUARK.

No. 14252—Opinion Filed Sept. 18, 1923.

Rehearing Denied Feb. 26, 1924.

1. **Banks and Banking—"Deposit"—Certificate of Deposit.**

Where money is placed on deposit in a bank and afterwards an interest-bearing certificate of deposit is issued for same, or any part thereof, the issuance of the certificate of deposit does not constitute a loan, nor deprive the deposit of its character as such.

2. **Same—Protection of Surety Bond.**

A surety or indemnity bond given to secure deposits will cover deposits for which interest-bearing certificate of deposit has been issued, and will cover deposits in the depository, whether made before or after the execution of a bond.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by James Ruark against the Southern Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Owen & Davis, for plaintiff in error.

Frank Nesbitt, for defendant in error.

Opinion by JONES, C. This suit was instituted on March 14, 1921, by James Ruark, defendant in error, against Southern Surety Company, plaintiff in error, in the district court of Ottawa county, to recover the sum of $1,983.43, alleged to be due plaintiff, Ruark, from the Picher National Bank of Picher, Okla., at the time of its failure July 10, 1920.

The suit is based upon a surety bond written by defendant, Southern Surety Company, as surety, for the Picher National Bank, as principal, to indemnify the plaintiff, Ruark, against any and all losses that he might sustain by reason of depositing money in said bank, in case of failure or default in the

payment of deposit. The bond was given on March 15, 1920, the material parts of which are as follows:

"The above named bank has been designated as a depository of the funds belonging to the obligee:

"Now, therefore, the condition of the above obligation is such that if the said principal shall during the term beginning at 9:00 o'clock a. m. on the 15th day of March, 1920, and ending with the close of banking hours on the 15th day of March, 1921, well and faithfully perform the trust reposed in it by such designation, either on legal order or on check or draft of the obligee, and shall well and truly indemnify the said obligee, from any and all losses which he may suffer or sustain during the period aforesaid as such depository as aforseaid, then this obligation to be void." etc.

The defendant answered by a general denial and further answering denies that plaintiff had the amount sued for on deposit in said bank at the time of its failure and further states that prior to the giving of the bond sued on by plaintiff, he gave a check to said bank for $1,000, for which he received a certificate of deposit, which is as follows:

"Certificate of Deposit. Not subject to check.
"The Picher National Bank, Picher, Okla.
"No. 127.

3-10-20.
"James Ruark has deposited in this bank $1,000.00, One Thousand dolllars, payable to the order of himself in current funds on the return of this certificate properly endorsed 6 months after date with interest at 4 per cent per annum.

"W. B. Smith, Cashier.
"No interest after 6 months.
"Int. 13.33."

And avers that it is not liable for the amount invested in certificate of deposit. And further avers that if the plaintiff had any sum of money on deposit in said bank, that same was deposited therein prior to the time of the execution of said bond, and for that reason it is not liable.

The cause was tried to a jury in the district court on October 20, 1922, and on request of plaintiff, the court directed the jury to return the following verdict for the plaintiff:

"State of Oklahoma, County of Ottawa. In the District Court, James Ruark, plaintiff, v. Southern Surety Company, defendant, No. 4635.

"We, the jury, impaneled and sworn in the above entitled cause, do upon our oaths, under the advice of the court, find for the plaintiff and fix the amount of his recovery at $1,168.42, with interest on $1,000.00, from March 10, 1920, until paid, and with interest on $168.09 from July 10, 1920, at the rate of 6% per annum until paid.

"B. F. Kinney, Foreman"

—to which action of the court, the defendant duly excepted and appeals.

Numerous errors are assigned, but we shall only consider such as are urged by plaintiff in error, in its brief, as we think they are decisive of the issues raised in the case.

The evidence is not clear as to just what amount of money the plaintiff had on deposit in the bank at the time of its failure, nor as to the exact facts upon which the court based its judgment, but evidently the $1,000, which was in the bank on certificate of deposit, was included and was one of the principal items constituting the sum for which the judgment was rendered, and is the error most seriously complained of by plaintiff in error.

There is no substantial conflict in the testimony as to the material facts governing the issues of the case. Plaintiff in error contends that the court committed error in directing a verdict for the plaintiff in the sum of $1,168.42, including the $1,000 on certificate of deposit, on the theory that money placed in a bank on a certificate of deposit constitutes a loan and is not a deposit, and cites many authorities which hold that a certificate of deposit is the equivalent of a note and is a loan, but the authorities all agree that every deposit creates the relationship of debtor and creditor, and in a sense, is a loan. So the fact that a certificate of deposit is a loan, does not necessarily deprive it of the nature of a deposit; and while the authorities are not clear on the point as to whether or not a surety or indemnity bond, such as we have to deal with in this case, will cover certificate of deposit, we are inclined to the view that it does.

It is the custom of banks, both national and state, to pay interest on deposits. The rate paid on deposits is controlled in national banks by the Comptroller of the Currency, and four per cent. seems to be the maximum rate allowed to be paid, and the rate in state banks is governed by order of the State Banking Department and four per cent. is the maximum rate, while the rate of interest paid on money borrowed is controlled by statutory enactments in both state and national banks.

The authority to borrow money by banks, both national and state, is by law lodged in the board of directors, while any officer or employe authorized to receive deposits may

issue certificates of deposit. And where a greater rate of interest is paid on deposits than that prescribed by the Banking Department, has been held by some courts to make the transaction a loan, rather than a deposit, and our court has held such a transaction to be void, and treated the same as a deposit, and not as a loan.

In Morrison State Bank v. Michael et al., 54 Okla. 257, 153 Pac. 1114, it is said:

"It is contrary to the public policy of this state, for the officers of a bank organized under the laws of this state, to pay, or agree to pay, 10 per cent. per annum interest on deposits in said bank, and because thereof, a contract entered into by the officers of such a bank to pay such a rate of interest on deposits is void, in so far as it relates to the payment of such rate of interest."

And in the body of the opinion, the court said, in substance:

"There is no question but what the officers of the bank had the right and power to enter into a contract with plaintiff, wherein she agreed to deposit her money in their bank. The only question for consideration is, whether the president and cashier of a bank, organized under the laws of this state, can, without the approval of the board of directors, agree to pay, or guarantee to a depositor, or other customer, interest on deposits at the rate of 10 per cent per annum."

Section 262, Rev. Laws 1910. is as follows:

"The affairs and business of any banking association organized under the laws of this state shall be managed or controlled by a board of directors of not less than three nor more than thirteen in number, who shall be selected from the stockholders, at such time and in such manner as may be provided by the by-laws of the association."

We are not herein questioning the power of the president and cashier to agree to pay a reasonable rate of interest on deposits, but are of the opinion, and therefore hold, that it would be against public policy for such officers to agree to pay the full legal rate of interest on deposits, or even to guarantee that rate for money left with it in any way. Section 259 of the banking laws of Oklahoma is as follows:

"A banking corporation organized under the provisions of this chapter shall be permitted to receive money on deposit not to exceed ten times the amount of its paid-up capital and surplus, deposits of other banks not included. and to pay interest thereon not to exceed the rate that may from time to time be fixed by the bank commissioner, as the maximum rate that may be paid upon deposits by banks in this state."

Volume 3, R. C. L. p. 518, par. 147, in discussing special and general deposits, lays down the rule that a deposit for which an interest bearing certificate of deposit is issued, is a general deposit.

In the case of Williams v. Rogers, 77 Ky. (14 Bush) 776, we find this statement:

"All deposits are loans and the relation of debtor and creditor thereby established between the bank and the depositor is the same, whether it is an ordinary or time deposit."

It seems that all deposits are loans, but all loans are not deposits.

Volume 3, R. C. L. p. 570, par. 198:

"While money for which a certificate of deposit is given by a bank is, in legal effect, in the nature of a loan, yet it is not a loan in the ordinary sense of the term, but a real deposit, within the meaning of those statutes which prohibit an insolvent bank from receiving deposits."

"Sureties are liable for a deposit covered by the bond although the depository issues an interest bearing time certificate of deposit therefor to the officer making the deposit." 13 Cyc. 816. St. Louis Co. v. Amer. L. & T. Co. (Minn.) 78 N. W. 113, 77 N. W. 815.

The portion of the opinion cited is directly in point, but on examination of the case in its entirety, we would not cite it as a controlling authority in this case; it is based on a different state of facts. However, we regard it as having some weight in determining the issues involved in the case at bar.

The law cited, and some of the decisions, apply to state banks. but the laws governing national banks are very similar in their nature. McGee on Banks and Banking (3rd Ed.) vol. 58, p. 389, states the rule which governs national banks when borrowing money:

"To what extent and for what purposes can a bank borrow money? Banks are not organized for the purpose of borrowing money. It is their business to loan and not to borrow. The power conceded by some of the courts that they may borrow money for the purposes of reloaning the same, is encouraging and sustaining a principle directly in violation of the purposes of a bank. It is, if permitted, as a privilege, a dangerous practice and as an incidental power, if used, is one which should be exercised with great discretion and care, and never without the expressed authority of the board of directors. If the authority of the board of directors is obtained there can be no question raised afterward that the officers acted in bad faith or in violation of law."

And from an examination of bank records, both national and state, we find that banks never list deposits of any character as bills

payable. Deposits of no kind are ever regarded or listed as indebtedness.

The Banking Department of the state in administering the guaranty law has always regarded interest bearing certificates of deposit as general deposits and paid same out of the bank guaranty fund securing deposits.

And in this case we think the certificate of deposit for $1,000 should be treated as a deposit and not as a loan, and that the bond given covers, and should protect same.

The other assignment of error urged is to the effect that defendant is not liable on the bond because of the fact that the deposits were made prior to the execution of the bond. 13 Cyc. 815, lays down the rule that:

"A depository bond usually covers deposits made before, as well as after, its execution."

Believing that the judgment is substantially correct and that no material error was committed, we, therefore, recommend that same be affirmed.

By the Court: It is so ordered.