CLARKSBURG TRUST CO. v. COMMERCIAL CASUALTY INS. CO.

No. 2905.

Circuit Court of Appeals, Fourth Circuit.
April 8, 1930.

James S. McCluer and Mason G. Ambler, both of Parkersburg, W. Va. (L. H. Adams, of Newark, N. J., and B. M. Ambler, of Parkersburg, W. Va., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in an action at law instituted by the Clarksburg Trust Company, as plaintiff, against the Commercial Casualty Insurance Company, as defendant, to recover on a bond alleged to have been executed to guarantee a deposit made by plaintiff in the Fayette City National Bank of Fayette City, Pa. The insurance company defended on the ground that the deposit in question was made on time certificate, whereas the bond covered only deposits subject to check. The District Judge directed a verdict for defendant, and plaintiff has appealed. Upon the appeal plaintiff contends: (1) That the certificate in question was not a time certificate, and, even though construed as such, came within the protection of the bond because of falling due within the period which the bond covers; and (2) that, even if plaintiff be not entitled to recover at law upon the bond as written, same was intended by the parties to guarantee the particular deposit covered by the certificate, and was issued in the form that it was through mutual mistake, and that, for this reason, the cause should be transferred to equity and relief granted in accordance with plaintiff's rights in the premises.

The facts are comparatively simple. It appears that some time prior to October 6, 1925, plaintiff was arranging to deposit $20,-000 on certificate of deposit in the Fayette City National Bank, on the understanding that before the deposit was made a proper depository bond in that amount should be executed to secure same. The Fayette City bank made application to defendant for such a bond; and a bond in that amount was issued by defendant upon one of its printed forms and forwarded to plaintiff. Upon its receipt, plaintiff's president noticed that its date did not correspond with the proposed certificate of deposit, and at once took the matter up with defendant's agent; and, as a result, it was returned and another bond issued. The agent of defendant, with whom the conversation with regard thereto was had, stated to plaintiff's president that this bond was in the form written by defendant to cover deposits such as the one here involved.

James M. Guiher and George M. Hoffheimer, both of Clarksburg, W. Va. (Philip P. Steptoe, Steptoe & Johnson, and Hoffheimer & Templeman, all of Clarksburg, W. Va., on the brief), for appellant.

Its condition, however, was expressed in the following language:

"Now, Therefore, the condition of this obligation is such that if the Bank shall, during the term commencing at nine o'clock A. M. on the 26th day of September, 1925; and ending with the close of banking hours on the first day of July, 1926, promptly pay over on proper legal order such cash and cash items as shall have been actually and regularly deposited with it during the term of this bond in an account subject to check, together with the balance of cash or cash items to the credit of the Obligee at the beginning of said term, as well as the amount of interest which the Bank has contracted to pay thereon, then this obligation shall be void; otherwise to be and remain in full force and virtue."

Upon receiving this bond, plaintiff, on the 7th day of October, 1925, made the deposit of $20,000 with the Fayette City National Bank, receiving from that bank a certificate of deposit bearing 4 per cent. interest and payable July 1, 1926. In the application for the bond, the Fayette City bank had stated, in answer to one question, that 4 per cent. interest was to be paid on the deposit, and, in answer to another, that no interest was paid on individual deposits, 4 per cent. on time certificates, 4 per cent. on savings deposits, and 3 per cent. on other deposits. The managing officer of the bank who signed this application was a director of the corporation which, as agent for defendant, received the application and issued the bond.

When the certificate of deposit fell due, it was indorsed by plaintiff and forwarded for collection. The Fayette City bank, however, did not pay it, but entered into negotiations with plaintiff to leave the money on deposit for twelve months longer. To this plaintiff agreed on condition that the bond be renewed; and accordingly, on July 9, 1926, defendant issued its certificate, continuing it in force "for the (extended) term beginning on the first day of July 1926 and ending on the first day of July 1927." On the same date the Fayette City bank paid the interest due on the old certificate of deposit and issued a new certificate in the following words:

"Fayette City, Pa.,

"July 1, 1926. No. 1059

"Fayette City National Bank

"Clarksburg Trust Co., Clarksburg, W. Va., has deposited in this Bank, Twenty thousand—Dollars ($20,000.00) Payable to the order of Clarksburg Trust Company, Clarksburg W. Va. on return of this certificate properly endorsed on July 1, 1927.

"Interest at the rate of 4 per cent per annum will be paid on this Certificate if left six months. Interest will cease at the end of twelve months.

"D. R. Barnum, Cashier.

"No. 5088 Renewal."

A short time before it fell due, this certificate was indorsed by plaintiff and forwarded for collection to the Bank of Pittsburgh, which in turn forwarded it to the Fayette City bank, in whose hands it was when it fell due. At that time the Fayette City bank failed to make payment, and shortly thereafter was placed in the hands of a receiver. As soon as plaintiff learned that the certificate had been dishonored, it gave notice to defendant, and, upon the latter's denying liability, forthwith entered suit. The bond provided that no suit should be brought thereunder unless commenced within ninety days from the date of expiration, cancellation, or default.

Plaintiff sued at law to recover on the bond. In the declaration, however, all of the facts of the case and the surrounding circumstances were set forth with great detail, and the bond, the continuation certificate, and the certificate of deposit were set out totidem verbis. The declaration contained also the following allegation:

"Plaintiff further says that before and at the time of the execution by said defendant of said continuation certificate as aforesaid, said plaintiff intended that said sum of $20,000.00, and only said last mentioned sum of money, so being deposited in and with said Fayette City Bank, should be and remain deposited with said Fayette City Bank to the credit of said plaintiff, upon and for and in consideration of the making and issue to said plaintiff of a certificate of deposit of the tenor and effect of said certificate dated the 1st day of July, 1926, and of said premises the said Fayette City Bank and said defendant had notice before and at the time of the execution of said continuation certificate as aforesaid, and said continuation certificate was executed as aforesaid and accepted by the said plaintiff with the intention and understanding of said Fayette City Bank, the said defendant and the said plaintiff that said sum of $20,000.00 should be deposited with said Fayette City Bank for and in consideration of the making and issue by said Fayette City Bank to the said plaintiff of a certificate of deposit of the tenor and effect of said certificate of deposit so dated the 1st day of

July, 1926, and that said Fayette City Bank should make and issue to said plaintiff a certificate of deposit of the tenor and effect aforesaid, and that said bond and continuation certificate did and would secure to the said plaintiff the prompt payment over to the said plaintiff of said sum of $20,000.00, as well as the interest which said Fayette City Bank contracted to pay thereon."

■ We agree with the learned judge below that the liability evidenced by the certificate of deposit was not covered by the bond as executed. The certificate of deposit was unquestionably a time certificate; and, although when it fell due it became in effect a demand certificate, not even a deposit covered by a demand certificate can be said to be a deposit "in an account subject to check." A certificate of deposit partakes of many of the characteristics of a promissory note. When payable to order, as the certificate in this case was, it is negotiable and passes by indorsement, and a holder in due course takes it free of equities. Furthermore, the deposit for which it is issued is payable, not upon the order of the depositor, as in the case of a deposit subject to check, but only upon the surrender of the certificate itself properly indorsed. Bank of Jasper v. State Bank of Rome, 258 U. S. 112, 119, 42 S. Ct. 202, 66 L. Ed. 490; People's Bank v. International Finance Corporation (C. C. A. 4th) 30 F.(2d) 46, 49; 3 R. C. L. 573 et seq. A deposit subject to check, on the other hand, is payable only upon the order of the depositor himself, or his duly authorized agent, and the right thereto cannot be transferred to a third person in such way as to cut off equitable defenses on the part of the bank. The distinction between the two kinds of deposits is universally recognized in the banking world; and we know of no legal principle upon which a bond given to secure one could be held to secure the other.

■ It is true that a bond given to secure deposits generally will be held to secure deposits for which interest-bearing certificates have been issued. National Surety Co. v. McCormick (C. C. A. 7th) 268 F. 185, 189; Southern Surety Company v. Ruark, 97 Okl. 268, 223 P. 622. This, however, is on the principle that the greater includes the less, and that deposits on certificate, being "deposits," although partaking of the nature of indebtedness evidenced by note, will be held to be within the general language of the bond, which in the case of a compensated surety is to be construed, as in the case of an insurance policy, most strongly against the company issuing it. But the bond here does not secure deposits generally, but merely deposits "in an account subject to check"; and certainly a deposit for which an ordinary certificate of deposit has been issued cannot, by any sort of construction, be held to be a deposit in such an account.

■ Nor are we impressed with the argument that the certificate of deposit when it fell due was a cash item within the protection of the bond. The bond protects cash or cash items deposited during its term in an account subject to check, together with the balance of cash or cash items to the credit of the obligee at the beginning of the term. The certificate of deposit, however, even if regarded as a cash item held for plaintiff when received from the Bank of Pittsburg for collection, was not a cash item deposited in an account subject to check; and, of course, it could not possibly be considered as an item to the credit of the obligee at the beginning of the term covered by the bond.

[5, 6] But while we do not think that plaintiff is entitled to recover under the bond as executed without reformation, we do think that the pleadings of plaintiff and the evidence adduced in support thereof, in the absence of contradiction or explanation, strongly support the right to this equitable relief. Fayette City, Pa., is not a clearing or reserve center, and plaintiff was not keeping, and had no occasion to keep, a checking account there, as defendant, from its general knowledge of the banking business, must have known. So far as this record shows, plaintiff, through the whole course of its existence, made only this one deposit there, which was made on certificate as a loan. It was this deposit, and no other, that the bond was intended to guarantee; and, if the testimony of plaintiff's president is believed, defendant and its agents, as well as the bank, understood this. Without reviewing or analyzing the evidence, as the case is to go back for hearing in equity, there is proof tending to show that the bond first tendered was rejected because it did not correspond with the date of the certificate, and that a new bond was issued in order that the two might correspond; that the application for the bond showed that the deposit was to bear 4 per cent. interest, a rate which it showed was borne only by time certificates and savings deposits, the latter of which are in no way involved; that the agents of defendant, not only prepared and issued the bond to guarantee the very certificate in question, but also represented to plaintiff that it did guar-

antee same and was the kind of bond issued by the company for that purpose, and that plaintiff accepted same under this assurance. In other words, there is proof to the effect that all parties intended that the bond should guarantee the payment of the certificate of deposit in question, and that, through mutual mistake as to the legal effect of the language employed, the bond as executed failed to express the meaning intended. While equity will not ordinarily relieve against a mere mistake of law, it is well settled that it will grant relief in a case such as this, where the mistake goes, not to the import of the contract actually made, but to the meaning of the language used in embodying same in a written instrument. The rule applicable in such cases is well stated by Professor Pomeroy, in his Equity Jurisprudence (4th Ed.) vol. 2, p. 1722, § 845, as follows:

"If, on the other hand, after making an agreement, in the process of reducing it to a written form the instrument, *by means of a mistake of law*, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of *the contract actually made;* but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing."

The case of Snell v. Insurance Co., 98 U. S. 85, 90, 25 L. Ed. 52, is directly in point. In that case one Keith procured a policy of insurance upon certain cotton belonging to a firm of which he was a member. It was intended that the interest of the partnership should be protected. The policy as delivered, however, insured only Keith. The language of the policy was clear, and Keith was familiar with it; but both he and the agent understood, and the agent represented, that it protected the partnership, and that it was not necessary that it state in terms that the insurance was for the account of the partnership. After laying down the salutary rule that parol proof in such cases is to be received with great caution, and, "where the

mistake is denied, should never be made the foundation of a decree, variant from the written contract, except it be of the clearest and most satisfactory character," the court granted relief on the ground of the mistake, saying, through Mr. Justice Harlan:

"It may be said that the mistake made out was a mistake of law, and, therefore, not relievable in equity. It was stated in Hunt v. Rousmaniere's Administrators (1 Pet. 1 [7 L. Ed. 27]), as a general rule, that mistake of law is not a ground for reforming a deed, and that the exceptions to the rule were not only few in number, but had something peculiar in their character. The court, however, was careful to say that it was not its intention 'to lay it down, that there may not be cases in which a court of equity will relieve against a plain mistake, arising from ignorance of law.' In the same case (8 Wheat. 174 [5 L. Ed. 589]), Mr. Chief Justice Marshall said that he had found no case in the books in which it has been decided that a plain and acknowledged mistake of law was beyond the reach of equity. In 1 Story, Eq. Jur., sect. 138 e and f (Redf. ed.), the author, after stating certain qualifications to be observed in granting relief upon the ground of mistake of law, says that 'the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion, and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best considered and best reasoned cases upon the point, both English and American.' The same author says: 'We trust the principle that cases may and do occur where courts of equity feel compelled to grant relief, upon the mere ground of the misapprehension of a clear rule of law, which has so long maintained its standing among the fundamental rules of equity jurisprudence, is yet destined to afford the basis of many wise and just decrees, without infringing the general rule that mistake of law is presumptively no sufficient ground of equitable interference.'"

An even stronger case is Griswold v. Hazard, 141 U. S. 260, 11 S. Ct. 972, 979, 999, 35 L. Ed. 678, where the opinion of the Supreme Court was delivered by the same learned justice. In that case it appeared that, upon the arrest of one Durant upon a writ of ne exeat, Griswold had signed a bond in which he undertook that Durant would abide and perform the orders and decrees of the court. This language was used by lawyers in drawing the bond, not carelessly,

but under the mistaken impression that the extent of the obligation, under the legal meaning of the terms, was that the principal would render himself amenable to the process and decrees of the court. In holding that the bond should be reformed to express the true intent and meaning of the parties, the court said:

"We are of the opinion that, although the condition of the bond in question was that Durant should 'abide and *perform* the orders and decrees' of the court in the suit in which it was given, all the parties, according to the decided preponderance of evidence, intended to, at the time, as an instrument binding the sureties for the appearance of the principal so as to be amenable to the process and decrees of the court, upon default in which, and not before, were they to be liable to pay the penalty. If the bond means, in law, more than that,—and counsel, in this court agree that it does,—the case is one of a mutual mistake, clearly established, as to the legal effect of the instrument. *There was no mistake as to the mere words of the bond; for it was drawn by one of Hazard's attorneys, and was read by Griswold before signing it. But, according to the great weight of the evidence, there was a mistake, on both sides, as to the legal import of the terms employed to give effect to the mutual agreement. In short, the instrument does not express the thought and intention which the parties had at the time of its execution.* And this mistake was attended by circumstances that render it inequitable for the obligees in the bond to take advantage of it. The instrument was drawn by one of Hazard's attorneys, and was presented and accepted as embodying the agreement previously reached. Griswold was unskilled in the law, and took the word 'perform' as implying performance in the sense of Durant's becoming amenable to the process of the court. He had no reason—unless the recollection of Gray, Durant, Van Zandt, and himself as to what occurred is wholly at fault—to doubt that the bond expressed the real agreement; especially if he heard Van Zandt's statement to Durant, when the latter was about to sign the bond, that it 'was, in effect, a bailbond.' A court of equity ought not to allow that mistake, satisfactorily established and thus caused, to stand uncorrected, and thereby subject a surety to liability he did not intend to assume, and which, according to the decided preponderance of the evidence, there was at the time no purpose to impose upon him. While it is laid down that 'a mere mistake of law, stripped of all other circum-

stances, constitutes no ground for the reformation of written contracts,' yet 'the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best-considered and best-reasoned cases upon this point both English and American.'" (Italics ours.)

In both of the above cases reference is made to attendant circumstances which render it inequitable that the party benefited be allowed to take advantage of the mistake. There are similar attendant circumstances here. If the evidence of plaintiff is to be believed, not only did defendant prepare the bond, or rather choose the printed form in which it was issued, but its agent assured plaintiff's president that the form was the proper one, and the one always used in such cases. In view of the decisions to the effect that a bond guaranteeing deposits generally will protect a deposit evidenced by certificate, even the lawyer to whom the bank submitted the bond for approval may have been misled by this assurance.

A more recent case granting relief on account of mistake as to the legal effect of language used in an instrument is Philippine Sugar Estates Development Co. v. Philippine Islands, 247 U. S. 385, 38 S. Ct. 513, 514, 62 L. Ed. 1177. In that case it appeared that there had been conveyed to the government of the Philippine Islands lands upon which were situate certain sugar mills, machinery, and railroads. The parties did not intend that these should be conveyed, and mistakenly supposed that, as a matter of law, they did not follow a conveyance of the land. In holding that the vendor was entitled to reformation, the court, speaking through Mr. Justice Brandeis, said:

"It is well settled that courts of equity will reform a written contract where, owing to mutual mistake, the language used therein did not fully or accurately express the agreement and intention of the parties. The fact that interpretation or construction of a contracts presents a question of law and that, therefore, the mistake was one of law is not a bar to granting relief. Snell v. Insurance Co., 98 U. S. 85, 88–91, 25 L. Ed. 52; Griswold v. Hazard, 141 U. S. 260, 283, 284, 11 S. Ct. 972, 999, 35 L. Ed. 678."

■ When it is remembered that the bond of a compensated surety is construed by the court as is an insurance contract [Maryland

Casualty Co. v. Fowler (C. C. A. 4th) 31 F.(2d) 881, 884, 63 A. L. R. 1375], what was said in the recent case of Hammel v. U. S. F. & G. Co., 246 Mich. 251, 224 N. W. 337, 338, is pertinent here. In that case the agent of an insurance company issued the wrong form of indemnity insurance policy under a mistaken construction of the meaning of a contract under which the obligee was working. In reforming the policy, the court said, after quoting from Pomeroy:

"In addition to the application of this principle, we have here a specialized kind of contract. The variety of forms of insurance policies, the fact that they are prepared by the insurer, are not the subject of negotiation and agreement as are ordinary contracts, the particular form is selected by the agent of the insurer, and the known general ignorance of the public on insurance matters, raise equitable considerations which forbid strengthening and induce relaxing the rules in order to work out the actual and intended purpose of a policy. The mistake of an agent in issuing the wrong form of policy may be corrected by reformation."

Without further reviewing the authorities, we regard it as well settled that, where parties have agreed upon a contract, but in reducing it to writing fail to embody it in the written instrument through mutual mistake, equity will reform the instrument as written to make it conform to their true agreement. While mistake of law is ordinarily no ground of relief, it is ground therefor where the mistake relates, not to the legal effect of the actual contract, but to the import of the language used, so that the instrument as written fails to express the intention which the parties had in mind, especially where the written contract is a printed form prepared by the party who would profit by the mistake and selected by his agent as expressing the contract which has been agreed upon. Oliver v. Mutual Commercial Marine Ins. Co., 2 Curt. 277, Fed. Cas. No. 10,498; Skelton v. Federal Surety Co. (C. C. A. 8th) 15 F.(2d) 756; Medical Society of S. C. v. Gilbreth (D. C.) 208 F. 899; Maher v. Hibernia Ins. Co., 67 N. Y. 283; Esch Bros. v. Home Insurance Co., 78 Iowa, 334, 43 N. W. 229, 16 Am. St. Rep. 443; 14 R. C. L. 902; note 28 L. R. A. (N. S.) 811, 831 and cases there cited.

And not only is there proof supporting the right of plaintiff to the equity of reformation, but there is also a foundation laid for same in the pleadings in the case. It is true that the pleading of plaintiff is a declaration at law and that it does not ask for reformation or plead mistake in so many words. It does, however, set forth all the facts of the case, and, to all intents and purposes, pleads the mistake which is shown by the proofs. It sets forth that the continuation certificate was executed with the intention and understanding of all the parties, including the defendant, that the deposit should be made with the Fayette City bank in consideration of the making and issuance by that bank of a certificate of deposit of the tenor and effect of that which was actually issued, "and that said bond and continuation certificate did and would secure to said plaintiff the prompt payment over to said plaintiff of said sum of $20,000, as well as the interest which the Fayette City bank contracted to pay thereon." As the bond, the continuation certificate, and the certificate of deposit are all set forth totidem verbis in the pleading, and as it appears that the language used in the bond and continuation certificate does not cover the certificate of deposit, it follows, as a necessary inference, that as a result of mistake these instruments do not express the real intention and agreement of the parties. In other words, although there is no direct allegation of mistake, the facts set forth in the complaint show that the parties were mistaken as to the effect of the language used. It has been held that this is sufficient averment of mistake to authorize reformation. Maher v. Hibernia Ins. Co., supra, 67 N. Y. 283, where the Court of Appeals of New York said:

"It was objected on the trial, that there was no allegation in the pleadings, that there was a mistake of fact, and that hence and because the plaintiff knew what the policy said when he received it, there was no case made for a reformation of the contract. The pleading of the plaintiff is inartificial in its statements, but it avers the existence of facts substantially as they afterwards appeared in evidence. There is no specific allegation of a mistake of fact; but it avers that which shows that the parties were mistaken as to the effect of the language which they used; and this is an averment of matter upon which a reformation of a contract may be based. (Pitcher v. Hennessey, 48 N. Y. 415.)"

The pleadings in the case, as well as the proofs adduced, therefore, support the right to relief in equity, although neither on the pleadings nor on the proofs is there a right to recover at law. We have a clear case, then, of a suit, which should have been instituted and tried as a suit in equity, instituted and tried as an action at law; and

the question which arises is whether we must affirm the judgment at law because plaintiff has misconceived its remedy (notwithstanding that such affirmance under the circumstances here will amount to a final denial of relief), or whether we have the power to transfer the cause to equity and send it back for hearing in accordance with the equitable rights of the parties. We think that we have such power, and that this is clearly a case in which same should be exercised.

The Act of March 3, 1915, 38 Stat. 956, Judicial Code 274a, 28 USCA § 397, provides:

"Sec. 274a. That in case any of said courts [i. e., courts of the United States] shall find that a suit at law should have been brought in equity or a suit in equity should have been brought at law, the court shall order any amendments to the pleadings which may be necessary to conform them to the proper practice. Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court. The cause shall proceed and be determined upon such amended pleadings. All testimony taken before such amendment, if preserved, shall stand as testimony in the cause with like effect as if the pleadings had been originally in the amended form."

While this statute does not abolish the distinction between actions at law and suits in equity, there can be no question that its purpose was to end the unseemly practice of turning a litigant out of court because he had come in at the wrong door. As said by Chief Justice Taft in Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 43 S. Ct. 118, 121, 67 L. Ed. 232, 243, the section quoted and the other sections of the same statute "do not create one form of civil action as do the Codes of Procedure in the states, but they manifest a purpose on the part of Congress to change from a suit at law to one in equity and the reverse with as little delay and as little insistence on form as possible." And in that case the statute was construed as making it the duty of the court, when a case is mistakenly instituted at law, to transfer it to equity. And this duty, under the express wording of the statute, rests not only upon the trial court, but upon any court of the United States, and there can be no question that an appellate court, as well as the trial court, has the power, of its own motion, to transfer a cause to the proper side. See Twist v. Prairie Oil & Gas Co., 274 U. S. 684,

689, 47 S. Ct. 755, 71 L. Ed. 1297; Cyclopedia of Federal Procedure, vol. 6, p. 696.

In National Surety Co. v. County Board of Education (C. C. A. 4th) 15 F.(2d) 993, we dealt with a suit in equity tried below as an action at law and brought up by writ of error. Treating the writ of error as an appeal under the Act of February 13, 1925, 28 USCA § 861, we heard the matter in equity and rendered the decree which was appropriate under the circumstances of the case, modifying the judgment rendered below.

In Southern Surety Co. v. Plott (C. C. A. 4th) 28 F.(2d) 698, 701, we affirmed a judgment sustaining a demurrer to a complaint in an action at law. The point was made that, if the complaint was not good at law, it stated grounds for relief in equity, and that, instead of sustaining the demurrer and dismissing the action, the court should have transferred it to equity. We sustained the lower court because we held that the complaint stated no ground for relief either at law or in equity, but clearly indicated that, if the complaint had set forth grounds for relief in equity, the cause should have been transferred instead of being dismissed. Judge Northcott, speaking for the court, said:

"While this is an action at law, attorneys for the plaintiff contend that, if the complaint makes a case for the consideration of a court of equity, the cause should be transferred to the equity side of the court, and there proceeded with as equity and justice may require. Under the authority of Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232, we are of the opinion that this is correct, yet, in view of the conclusions reached by us as above stated, the plaintiff is not entitled to recover against any of the defendants other than Plott, either at law or in equity."

In Fidelity & Casualty Co. v. Glenn (C. C. A. 4th) 3 F.(2d) 913, and Great American Insurance Co. v. Johnson (C. C. A. 4th) 25 F.(2d) 847, rehearing denied 27 F.(2d) 71, we dealt with cases tried at law which should have been heard in equity, and affirmed the judgments below because it appeared that the result reached in law was what should have been reached in equity.

In the very recent case of Hutchings v. Caledonian Ins. Co. (C. C. A. 4th) 35 F.(2d) 309, we reversed a judgment on a verdict directed for a defendant, on the ground that the court should have allowed an amendment of the pleadings and admitted evidence offered to reform the policy sued on, and

634

should have treated such motion to amend as, in effect, a motion to transfer the cause to the equity side of the docket.

 It is said, however, that by instituting the action at law plaintiff has elected between its legal and equitable rights, and is estopped by such election from now asking that the cause be transferred to equity. This result would not follow in the situation here, even if the right of transferring to equity were not given by statute. See Northern Assurance Co. v. Grand View Building Ass'n, 203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109. But the statute above quoted and the interpretation placed upon it in the case of Liberty Oil Co. v. Condon Bank, supra, would seem to have removed all doubt with regard thereto. There would be no sense in providing that an action erroneously instituted at law might be transferred to equity and proceeded with there, if instituting the action at law of itself amounted to an election of remedies and an abandonment of equitable relief.

 It is further objected that defendant did not in the court below move to transfer the case to the equity docket or reserve any exception based upon the right to have the case heard in equity. This is true; and, of course, the ordinary rule is that for points to be passed on here they must have been reserved in the lower court. We are required, however, by the Act of February 26, 1919 (28 USCA § 391), on the hearing of an appeal, to give judgment "after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." There is no doubt, as stated above, that we have the power in this court, of our own motion, to transfer a cause from law to equity or vice versa, where we find that it has been wrongly instituted; and, while we will not ordinarily do so unless the point is properly raised in the court below, we will not hesitate to exercise the power when otherwise a failure of justice may result. Courts exist to do justice; and it would be a reproach to any legal system to deny to a litigant relief, to which upon his pleadings and proofs he is entitled, merely because his counsel have come in by the wrong door of the court.

 The case will be remanded with directions that the judgment in favor of defendant be set aside and the case transferred to the equity docket for hearing in accordance with the principles herein set forth, and with leave to both sides to amend their pleadings and introduce further evidence. In what we have said as to the right to have the case transferred to equity, we have intended to indicate no opinion as to what should be the final disposition thereof. That is a question to be determined upon the evidence that shall be adduced and in the light of the rule laid down in Snell v. Insurance Co., supra, that, where the mistake averred relates to the legal effect of the language used in a contract, and the mistake itself is denied, parol proof is to be received with caution, and, to be the basis of a decree variant from the written contract, must be of the clearest and most satisfactory character. Each party will pay its own costs on this appeal.

Remanded.

Judge WADDILL presided at the hearing of this case but, owing to illness, did not participate in the decision.