**PHOENIX ASSURANCE CO. OF NEW YORK, Appellant,**

v.

**Charles H. HUGHES, Appellee.**

**No. 8577.**

United States Court of Appeals
Tenth Circuit.

Oct. 11, 1966.

John P. Akolt, Jr., Denver, Colo. (Denis G. Stack and Akolt, Shepherd & Dick, Denver, Colo., with him on brief), for appellant.

Earl H. Johnson, Denver, Colo., for appellee.

Before HILL, SETH and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

The action was removed from the District Court of the City and County of Denver, State of Colorado, immediately after the complaint was filed. All subsequent proceedings were in the Federal District Court.

The plaintiff-appellee filed an action in the State Court for money due and owing against Ludwig & Patterson Company (debtor) in the State District Court and at the time of filing, sued out a Writ of Attachment and procured issuance of garnishment against certain persons who held money belonging to the debtor. Among those holding money was the National City Bank of the City of Denver, who was indebted in the amount of $7,-406.87.

The debtor moved to quash the attachment and a hearing was held. The court initially refused to quash the attachment, but upon representations of debtor that the money held by the bank garnishee was required to meet current payrolls, it authorized a release with the stipulation that debtor post a security bond. The debtor obtained a surety bond from de-

fendant-appellant. Subsequently, plaintiff-appellee obtained a judgment against debtor, who had become insolvent in the interim. The plaintiff-appellee demanded payment from the surety-appellant and received a denial of obligation.

The refusal to pay was based upon the provision of the bond, which contained the language of the Colorado attachment rule relating to release of attached property, to the effect that payment would be made only if the writ of attachment "is not dissolved." The District Court had dissolved the writ of attachment and the writ of garnishment at the time the bond was secured and approved.

Appellees filed this action contending that because of a mutual mistake regarding the purposes of the security instrument, the intent of the parties was not reflected and, therefore, the instrument should be reformed to provide that payment would be made if "the attachment is dissolved." Appellant removed the action to the Federal Court at this juncture.

Appellant contends that attachment is a statutory action, in derogation of the common law and, therefore, the provisions of the statute must be strictly construed. He takes the position that the order dissolving the attachment, being a final order with a right of appeal pursuant to Colorado law, cannot be collaterally attacked.

Appellee concedes that he cannot collaterally attack the judgment and relies solely upon his remedy for reformation of the instrument.

The trial court found:

"Now there is no question in the Court's mind that what the parties intended was this: A bond would be put up to protect the plaintiffs if the plaintiffs should receive a judgment against Ludwig and Patterson Company; that they would have as security for that judgment, the sum of $7,406.87 in the amount of the bank account.

Now the strict terms of the 'Undertaking on Release of Attachment' is a printed form, and if read strictly, it would mean that the minute that Judge Santo put his name on this order dissolving the attachment, that this bond was absolutely worthless to the plaintiffs.

Now obviously that was not the intent of the parties and obviously it was not the intent of counsel for the parties, because if such was the intent, it would appear a gross deception upon the plaintiffs to produce a bond and, at that time, stipulate the entry of an order which would then validate [invalidate] any security whatsoever for the plaintiffs.

All right Now that's as far as the Court has to go in deciding this case, and the Court will enter judgment in the amount of $7,406.87 in favor of the plaintiff against the defendant together with interest from the date that the plaintiffs obtained final judgment in the State District Court."

In order to properly consider the judgment of the trial court, we must first determine the effects of Colorado Rule 102(w) and (x) [1] governing attachments, as it relates to the action of the state court in dissolving the writ. Rule 102 (w) authorizes parties, whose property has been attached, to obtain a bond releasing the property attached, but assuring the creditor if judgment is obtained, that the property will be returned to the sheriff for final action. Rule 102(x) provides for the conditions of the bond and the liability of the sheriff who holds the attached property and who must approve the bond before releasing the property. One of the conditions for release of the property under this section is that "the attachment is not dissolved."

Rule 103 relates to garnishment and has no provision similar to Rule 102 for release of cash in the hands of a garnishee. It is clear that the writ used in this case against the bank was a writ of garnishment.

1. Colo.R.Civ.P. 102(w) (x), 1 Colo.Rev.Stat. (1963).

An early Circuit Court decision in the District of Colorado discusses the attachment and garnishment procedures, "The sections of the code to which reference has been made,[2] do not provide for discharging garnishees or giving bond as therein specified * * *."[3]

"We may admit that this provision[4] does not apply to money in the hands of a garnishee * * *."[5] The release of garnishment considered by Judge Santo, had no prescribed statutory authority; therefore, the release of the money in the hands of the garnishee must be examined in the light of this lack of guiding statutory authority.

We then look to what was intended by all of the parties and find the trial court to be correct in its determination of this matter. It cannot be said upon review of all the evidence that the court was clearly erroneous.[6]

It would be illogical to conclude that the parties present in Judge Santo's chambers would prepare, offer, accept and approve a surety bond which by its terms became invalid as soon as it was filed; hence, the evidence is clear, persuasive and convincing,[7] as required to reform an instrument.

"[W]e regard it as well settled that, where parties have agreed upon a contract, but in reducing it to writing fail to embody it in the written instrument through mutual mistake, equity will reform the instrument as written to make it conform to their true agreement. While mistake of law is ordinarily no ground of relief, it is ground therefor where the mistake relates, not to the legal effect of the actual contract, but to the import of the language used, so that the instrument as written fails to express the intention which the parties had in mind, especially where the written contract is a printed form prepared by the party who would profit by the mistake and selected by his agent as expressing the contract which has been agreed upon. [Citations omitted]."[8]

The findings of fact and conclusions of law clearly indicate a mutual mistake and, therefore, direct the reformation of the instrument.

Affirmed.

2. Referring to the attachment provision.

3. Henry and others v. Gold Park Mining Co., 10 F. 11 (Cir.Ct.Dist.Colo.1881).

4. Referring to the provision authorizing the sheriff to release property similar to Rule 102(w) and (x).

5. Schradsky et al. v. Dunklee, 9 Colo.App. 394, 48 P. 666, 667, (Colo.Ct. of App. 1896).

6. F.R.Civ.Proc. 52(a).

7. Mike Occhiato Mercantile Co. v. Allemannia Fire Ins. Co., 98 F.Supp. 888, 892 (D.Colo.1951).

8. Clarksburg Trust Co. v. Commercial Casualty Co., 40 F.2d 626, 632 (4th Cir. 1930).