ROYAL INDEMNITY COMPANY, a corporation, *Appellant,* v. BOARD OF BOND TRUSTEES OF SPECIAL ROAD AND BRIDGE DISTRICT NUMBER ONE OF ALACHUA COUNTY, FLORIDA, a corporation, *Appellees.*

BOARD OF BOND TRUSTEES OF SPECIAL ROAD AND BRIDGE DISTRICT NUMBER ONE OF ALACHUA COUNTY, FLORIDA, a corporation, *Appellant,* v. ROYAL INDEMNITY COMPANY, a corporation, et al., *Appellees.*

HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, *Appellant,* v. ROYAL INDEMNITY COMPANY, a corporation, et al., *Appellees.*

149 So. 389.
Opinion filed May 31, 1933.
Re-hearing denied July 14, 1933.

*Knight, Adair, Cooper & Osborne, Hampton & Hampton and Layton & Gray,* for Appellants:

*Stockton, Ulmer & Murchison, Marks, Marks, Holt, Gray & Yates* and *Fleming, Hamilton, Diver & Lichliter,* for Appellees.

BROWN, J.—This is an appeal from an interlocutory order of the Circuit Court for Alachua County, allowing and holding as sufficient certain pleas filed by Aetna Casualty & Surety Company and Standard Accident Insurance Company to a bill of complaint filed by Royal Indemnity Company and to that portion of the answer filed by the Board of Bond Trustees of Special Road and Bridge District Number One of Alachua County, Florida, and to that portion of the answer filed by Hartford Accident and Indemnity Company, which claims affirmative relief.

Separate appeals were taken by said Royal Indemnity Company, said Board of Bond Trustees and said Hartford Accident and Indemnity Company from such order. Since the question of law involved in each of these appeals appears to be identical, this Court allowed these separate appeals to proceed upon a common record.

The bill of complaint in this case was brought by the Royal Indemnity Company, so it claims, as a suit for exoneration in connection with the depository bond executed by the complainant covering deposits made by the Board of Bond Trustees above referred to in the Florida Bank & Trust Company at Gainesville, Florida, which Bank closed on October 8, 1923. At the time of the closing of the Bank various other similar bonds had been given to the Board of Bond Trustees by the Bank as principal and the several surety companies as sureties. The bill of complaint, which it is contended is based upon the doctrine of exoneration, sought to have the respective liabilities of all these surety companies determined in one suit, and a decree entered for

the payment of the respective liabilites so determined. Demurrers to the bill were filed and overruled. The Board of Bond Trustees answered and set up its claim for affirmative relief, praying for a decree against the several surety companies to the full extent of their respective liabilities. The Hartford Accident and Indemnity Company filed an answer asserting that it had paid to the Board of Bond Trustees substantially the full amount of its bond and likewise claimed affirmative relief against the other surety companies by way of contribution on account of its having paid more than its proportionate share of the loss.

On October 2, 1923, when certain of the bonds, including those of appellees, were delivered and accepted, and also on October 8, 1923, when the Bank was closed by the Comptroller, there was due by the Bank to the Board of Bond Trustees on its deposit account in said Bank approximately $146,460.69. The bill alleges that the Bank was insolvent and in default on Oct. 2nd, 1923, and was closed by the Comptroller on Oct. 8, 1923. The answers filed denied that the Bank was either insolvent or in default on Oct. 2, 1923. The rceivers appointed by the Comptroller thereafter paid to the Board of Bond Trustees the sum of $43,850.40.

On August 7, 1923, about two months before the Bank closed, the Board of Bond Trustees sold certain of its bonds, and funds arising therefrom were deposited in the Florida Bank and Trust Company pursuant to resolution duly adopted by the Board, of which the aggregate balance remaining when the Bank closed was the amount above named, all of which was deposited on or after August 16, 1923, and prior to October 2, 1923. Prior to making the deposit of August 16, 1923, the Board demanded that the Bank furnish said Board with surety bonds securing said funds so to be deposited. Prior thereto, the Bank had furnished said Board with the bond of United States Fi-

delity and Guaranty Company, dated January 5, 1923, as surety and the Bank as principal, in the sum of $85,000. And prior to this on Dec. 11, 1922, the Board took and approved as security the Bank's bond, with Royal Indemnity Company as surety, in the sum of $30,000. On August 14, 1923, the Bank as principal and the Royal Indemnity Company as surety became bound by bond to the Board in the additional sum of $30,000. And on August 13, 1923, the Bank furnished and the Board accepted the bond of the Bank, with the Hartford Accident and Indemnity Company as surety, in the sum of $15,500.

The foregoing bonds, aggregating $160,500, were therefore in possession, of the Board of Bond Trustees when the deposits above mentioned were made and also when the Bank closed.

However, on Oct. 2, the Board of Bond Trustees passed a resolution which the said U. S. F. & G. Company claimed amounted to a cancellation of its $85,000 bond, at least as to any default or liability or responsibility that might arise or occur thereon, subsequent to that date, and by said resolution accepted in lieu of said $85,000 bond several bonds of the said U. S. F. & G. Company in the aggregate sum of $35,000 and the bond of the Aetna Casualty Surety Company in the sum of $20,000 and the bond of the Standard Accident Insurance Company in the sum of $30,000, these new bonds amounting in the aggregate to $85,000. Six days later the bank closed.

The answer of the Board of Bond Trustees, which prays affirmative relief against all of said surety companies, alleges that prior to the execution of all these bonds the Board had designated said Bank as a depository of its funds and required it to secure depository bonds for the protection of such public funds that should come into its hands or be deposited with it, and insisted upon the full liability to it of

all of the several surety companies on all of said bonds, to the full extent of its loss.

The Hartford Accident and Indemnity Company likewise filed an answer, alleging that it had paid substantially the amount of its bond and asserting that all of the bonds were liable for the loss and praying for affirmative relief by way of contribution from the other bonding companies.

It appears from the answer of the Board of Bond Trustees that at a regular meeting of said Board on Oct. 2nd, 1923, the following resolution was adopted:

"WHEREAS, the Florida Bank & Trust Company of Gainesville, Florida, the designated depository of the funds of Special Road and Bridge District No. 1, Alachua County, Florida, offers to substitute for United States Fidelity and Guaranty Company Bond No. 300, 140-23, in the sum of Eighty-five thousand ($85,000.00) Dollars, the following depository bonds to-wit: Three (3) United States Fidelity & Guaranty Company bonds in the sum of Ten Thousand ($10,000.00) Dollars each, one (1) United States Fidelity & Guaranty Company bond in the sum of Five Thousand ($5,000.00) Dollars, one (1) Aetna Casualty & Surety Company bond in the sum of Twenty Thousand ($20,000.-00) Dollars, and one (1) Standard Accident Insurance Company in the sum of Thirty Thousand ($30,000.00) Dollars, making a total of Eighty-five Thousand ($85,000.-00) Dollars; and Whereas the Bonds offered to be substituted by the Florida Bank & Trust Company are executed by Surety Companies qualified to do business in the State of Florida and the said total amount of said Bonds is a sum equal to the amount of the bond of the United States Fidelity & Guaranty Company No. 300, 140-23; and Whereas in view of the substitution of the said Bonds, the Florida Bank and Trust Company and the United States Fidelity and Guaranty Company are desirous of a release and can-

cellation of United States Fidelity & Guaranty Company Bond No. 300, 140-23 in the sum of Eighty-five Thousand ($85,000.00) Dollars:

"THEREFORE, Be It Resolved that upon the receipt and approval by the Board of Bond Trustees of Special Road and Bridge District No. One, Alachua County, Florida, of the three (3) Depository Bonds of the United States Fidelity & Guaranty Company in the sum of $10,000.00 each, one (1) United States Fidelity & Guaranty Company Bond in the sum of $5,000.00, one (1) Aetna Casualty & Surety Company Bond in the sum of $20,000.00, and one (1) Standard Accident Insurance Company Bond in the sum of $30,000.00, making a total of $85,000.00, that the United States Fidelity & Guaranty Company Bond No. 300, 140-23 in the sum of Eighty-five Thousand ($85,000.00) Dollars executed by the Florida Bank and Trust Company at Gainesville, as principal, and the United States Fidelity & Guaranty Company as surety, dated the 5th day of January, 1923, be and the same is herein and hereby released; cancelled and discharged, and the surety released from all liability and responsibility that may arise or occur thereon subsequent to this date, it being understood and agreed by and between the Board of Bond Trustees of Special Road and Bridge District No. 1, Alachua County, Florida, and the Florida Bank and Trust Company of Gainesville as principal on said bond, and United States Fidelity & Guaranty Company as surety on said Bond, that said United States Fidelity & Guaranty Company Bond Number 300, 140-23 shall remain in full force and effect as depository bond for any and all liability default or failure that now exists or that accrued prior to this date of the Florida Bank and Trust Company to safely keep, account for, pay over on demand by proper authorities all moneys, principal and in-

terest, that may have come into its custody or control as depository under said Bond."

Also, at the same time and place, said Board adopted the following resolution:

"On motion it was ordered that the following bonds be and the same are hereby approved as security for funds of the Board of Bond Trustees of Special Road and Bridge District No. 1, deposited in the Florida Bank and Trust Company of Gainesville, Florida:

"Three (3) United States Fidelity & Guaranty Company Bonds in the sum of Ten Thousand Dollars ($10,000.00) each, One (1) United States Fidelity & Guaranty Bond in the sum of Five Thousand dollars ($5,000.00), one (1) Aetna Casualty & Surety Company Bond in the sum of Twenty Thousand Dollars ($20,000.00) and (1) Standard Accident Insurance Company Bond in the sum of Thirty Thousand Dollars ($30,000.00), being the bonds taken in substitution of the United States Fidelity & Guaranty Company Bond No. 300, 140-23."

Then follows this allegation of the Board's answer:

"And in accordance with the foregoing Resolutions the said Board did not deliver the said $85,000.00 Bond of the said United States Fidelity & Guaranty Company, but held and retained the same for the purposes and in the manner as recited in the above and foregoing Resolutions."

To the bill filed by Royal Indemnity Company, and to that portion of the several answers of the Board of Bond Trustees and the Hartford Accident and Indemnty Company claiming affirmative relief, the Aetna Casualty Company and Standard Accident Insurance Company filed their several and separate pleas, which, on being set down for hearing were, as hereinabove stated, allowed and held sufficient by the Court. All of these pleas are substantially the same. They differ of course as to date and amount of the bonds, the bond of the Standard Accident Insurance

Company having been dated Sept. 21, 1923, and having been given for $30,000, while the bond of the Aetna Casualty and Surety Company is alleged to have been dated Sept. 27, 1923, and for the sum of $20,000. Each of said Companies allege in these their several pleas that they executed these bonds upon the application of the Florida Bank and Trust Company; that each of said bonds named as obligee, the Board of Bond Trustees of Special Road and Bridge District No. One, Alachua County, Florida, a body corporate, and the condition expressed in each of said bonds was substantially as follows:

"The condition of the above obligation is such that whereas the principal, the Florida Bank and Trust Company of Gainesville, Florida, was on the 7th day of August, A. D., 1923, designated by the Board of Bond Trustees of Special Road and Bridge District No. One of Alachua County, Florida, as the depository of the funds of the said Special Road and Bridge District No. One, of Alachua County, Florida, for the period commencing on the 14th day of August A. D. 1923 and until its successor or successors are designated and qualified under the Laws of the State of Florida.

"Now, THEREFORE, if the Florida Bank and Trust Company, the above burden, shall safely keep, account for and pay over upon demand by proper authority, all money that may come into its hands by virtue of its acting as said depository, and shall in all respects duly and faithfully perform all the duties, obligations and requirements imposed upon it or prescribed by law, when this obligation to be null and void, otherwise to remain in full force and virtue."

Each of said pleas further alleges that the bond referred to therein was delivered by said Bank to said Board, and that on Oct. 2nd, 1923, the said Board approved and accepted the same; that after the acceptance of said bond on Oct. 2nd, 1923, no money came into the hands of said Bank

by virtue of its acting as depository for said Board excepting the sum of $41.56, which amount was tendered by the bonding company to the Board, and such tender refused, and that said Board has continuously declined to accept payment thereof, and that the defendant "hereby tender" the sum of $65.00 to said Board, being equal to the principal and interest of said deposit up until the time and filing of the plea, and has made profert of the said sum by paying the same into the registry of the Court at the time of the filing said plea.

For these reasons each of the defendants allege in their pleas that they are not liable upon said respective bonds, etc., and pray to be dismissed with their reasonable costs, etc.

Counsel for appellants, in the first division of their brief say:

"The question involved in the case at bar is whether a surety company is liable under a depository bond for public monies deposited in a bank by a board of bond trustees pursuant to a proper designation of the bank as such depository, where the bond was dated, executed, delivered and accepted subsequently to the time of the deposit of the monies, but prior to their loss, consequent upon the failure of the bank, where the bond is conditioned that the principal (the bank) "shall safely keep, account for and pay over upon demand by proper authority, all money that may come into its hands by virtue of its acting as said depository, and shall in all respects duly and faithfully perform all the duties, obligations and requirements imposed upon it or required by law'"

Counsel for appellees insist that the statement of the question involved in these appeals should be stated thus:

"If a depository bond, given to secure public moneys, contains the statutory condition that the bank * * * 'shall safely keep, account for and pay over, upon demand by proper authority, all money that may come into its hands

by virute of its acting as said depository,' and if no money came into the hands of the bank after the date of the delivery and acceptance of the bond, is that bond liable for deposits made before that date?"

In a brief filed by the Board of Bond Trustees, it is contended that that the foregoing statement of the question involved, as made by appellees, is not entirely correct, for several reasons, one of them being that the allegations of the answer of the Board are to the effect that bonds had already been given for these deposits made in the Bank prior to October 2, 1923, and that the bonds of the appellees were presented and accepted on that date in substitution for such other bonds, securing deposits theretofore made, thus showing the intention of the parties that all deposits should be properly secured, those made either before or after said date, and that the language of each appellee's bonds should be construed in light of such substitution and the intent of the parties, obligor and obligee, as shown thereby. The complainant in its bill alleged that appellees' bonds were taken as "additional security" for said deposits. Appellees contend that appellants are in hopeless conflict in respect to the meaning of the resolutions adopted by the Board on October 2nd, but that the fact remains, as shown by the pleadings that at the time of the acceptance of appellees' bonds, the Board was amply secured by other bonds then in full force and effect, aggregating $160,500, and that there is no allegation anywhere in the pleadings that appellees were given any notice whatsoever that their bonds were to be used in an attempted substitution, and that there is nothing in the bonds themselves to indicate it. Also that the Board by its resolution, although attempting to release the $85,000.00 bond of the U. S. F. & G. Company to a certain extent, nevertheless retained all rights thereunder

with respect to any liability, default, or failure up to that date.

There had been no default by the Bank up to October 2, 1923, at least in the sense of any failure on its part to pay over on demand any funds which had been deposited with it by the Board. In that sense, there was no default by the Bank until October 8, 1923. In its answer, the U. S. F. & G. Company alleges that it had therefore not incurred any liability whatsoever on its $85,000 bond at the time the resolutions of October 2nd were adopted, and that the effect of those resolutions were to absolutely release it from all liability on that bond. The U. S. F. & G. Company further alleges in its answer that it had thereafter paid to the Board of Bond Trustees its ultimate liability under its four new bonds aggregating $35,000, which had been taken and accepted by the Board on October 2nd, at the same time that the two bonds of the appellees were taken and accepted.

On the other hand, it might be said that if any liability had been incurred on the bonds held by the Board on Oct. 2, including the $85,000 bond, the resolution of the Board shows an intent to hold the U. S. F. & G. Company for such liability, and to only release the $85,000 bond as to any liability that might arise or occur thereon subsequent to Oct. 2nd. This, appellees argue, might indicate that the Board intended to hold the U. S. F. & G. Company for any liability incurred up to Oct. 2, and to look to the new bonds taken on that date to protect it against any liability incurred by deposits made and not paid on demand in the future, which would tend to support the ruling of the court below and the contention of the appellees. Appellant's argument to the contrary is probably even stronger. Inasmuch, therefore, as the resolutions adopted by the Board afford some ground for somewhat conflicting inferences on this question,

we will return to a consideration of the language of appellee's bonds, which were approved and accepted by the Board as written. However, the resolution approved and accepted them "as security for funds * * * deposited" in said Bank, and "in substitution of" the U. S. F. & G. Company's $85,000 bond.

Each of the bonds in question contains a recital that the Bank had been duly designated on August 7, 1923, by the Board as the depository for funds of the district. It was after this designation that the deposits were made, a large portion of which was still standing to the credit of the Board on the books of the Bank on Oct. 2, 1923. But appellees contend that their bonds were not accepted and approved and hence did not go into effect until Oct. 2, 1923, and that as the plain language of the bonds only carried liability for money that "may come into its hands by virtue of its acting as said depository" they could only be held liable for deposits made on and after the date, and as there were no such deposits, except the small run which they tendered, they are free from liability. Appellants, on the other hand, contend that the quoted language should, under the authorities, be given a present and retrospective effect so as to bind the appellees for any deposits theretofore made by the Board with the Bank after its designation as the depository of the funds of the district on Aug. 7, 1923.

In the case of National Surety Company v. Williams, 74 Fla. 446, 77 So. 212, it was held by this Court that where a surety company isues a bond for a money consideration and pecuniary gain, it is regarded as an insurer, whose contracts being drawn by itself, should, if there is any ambiguity in the language employed, be resolved most strongly against it. It was also said in that case:

"If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to

the bank, and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers or agents of the surety company. This is a well established rule in the law of insurance."

Further on in the opinion it is also said:

"The rule for the interpretation of insurance contracts is that in all cases the policy must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim to the indemnity which in making the insurance it was his object to secure."

Appellees contend that this principle of construction is not applicable here because the bonds of appellees were made pursuant to and as required by Sec. 3 of Chapter 6932, Acts of 1915, now appearing as Sec. 2405 Compiled General Laws, and that now inasmuch as the language of the bonds followed substantially the language of the statute, and that as, under the statute, the bonds must be made before the Bank is authorized to receive public money, the reason for the above rule of construction falls; that the language used in the bonds is not the language selected by the surety company, or its officers, but it is the language required by the statute, which reads in part, "conditioned that said Bank insure for safe keeping, accounting for and paying over upon demand by proper authority all money that may come into its hands by virtue of its acting as said depository and will in all respects duly and faithfully perform the duty imposed upon it." While the Act of 1915 above quoted from deals with county depositories and with bonds to protect funds deposited by the Board of County Commissioners and the Board of Public Instruction, nevertheless appellees insist that such Act is made applicable to these bonds by reason of Sec. 16 of the Special Act Creating "Special Road and

Bridge District Number One of Alachua County, Florida," being Chapter 7414 of the Acts of 1917, which Sec. 16 of said Act reads in part as follows: "The bond trustees shall require all depositories to give suitable security to protect the bond and other funds so deposited, such security to be of the same character as now provided by law governing depositories." This section, they insist, refers to the statute governing county depositories enacted in 1915, that the county depository Act of 1915 contemplates that no Bank can become a depository until it has actually executed and delivered a surety bond, and that this must be done before deposits are received, and that everything in the Act points clearly to the fact that the bond is for the purpose of protecting money to be thereafter deposited in the bank. Furthermore, that the Act did away with the necessity for designating county depositories and provided that any Bank making the required bond thereby became qualified as a depository and entitled to receive a deposit of an equitable share of the public money of the county. While this argument is very plausible, we cannot assent to it. The language of Sec. 16 of the Special Act of 1917 is too vague and general to admit of the construction that such Act requires that the bonds taken by the Board of Bond Trustees of the district shall follow the language of Sec. 3 of the Act of 1915 relating to county depositories. It merely provides that "such security to be of the same character as now provided by law governing depositories." It will be noted that this does not say that the law governing *county* depositories. Furthermore, a bond might be of the same general nature or character as required by the Act of 1915 relating to county depositories without following its exact language as to the condition of the bond. Indeed these bonds do not follow the exact language of the Act of 1915. Where the Act of 1915 says "and will in all respects duly and faithfully perform the

duty imposed upon it," the bonds here in question use this language: "and shall in all respects duly and faithfully perform all the duties, obligations and requirements imposed upon it or prescribed by law." This is broader and more comprehensive language than that used in the Act of 1915.

Indeed, it is not at all clear that the Board of Bond Trustees of the district here involved is governed by the statutory provisions pertaining to county depositories. It is not a county; it is a separate entity, a body corporate, specifically created as such, and governed by the special statute creating it, wherein its duties with respect to moneys, deposists and depositories is clearly set forth. The county depository statute deals only with county school funds and funds under the care and control of Boards of County Commissioners, and the moneys here involved do not fall within either of these classifications.

Appellants argue that the condition clauses of the bonds of appellees may have as much signification of past or present as of future time; that the law looks principally at the purpose for which the instrument was given to determine the tense of the verb; that the purpose of the bonds herein involved was security for the current obligations of the Bank to the Board, that is for the repayment of each deposit of money as may have been made, as well as any that might have been made thereafter; that this construction of the bonds is the meaning supported by the weight of authority, citing the case of Brown v. Board of County Commissioners of Wyandotte County, 58 Kan. 672, 50 Pacific 888. It appears that the condition of the bond in that case was that the principal "shall promptly pay any and all deposits of the county which may be deposited with it as such county depository." The defense of the sureties was that the condition of the bond was prospective, hence they were not responsible for moneys deposited prior to the date of its ap-

proval and then not actually on hand. The Court held the sureties liable. The Court held that the obligation of the sureties was to pay the *debt* of the Bank, and unless there was something in the terms of the bond which limited the obligation to the payment of such debts as might thereafter be created, the bond would be given a retrospective effect in the sense of being security for such debt as existed at the date of its approval.

The cited case is quite closely, but not exactly, in point with the case at bar. In the cited case, the Court said, "Grammatically the clause 'which may be deposited' may have as much the signification of past or present as future time. The law will principally look at the purpose for which the instrument was required and given to determine the tense of the verb. That purpose was security for the current obligations of the Bank to the county; that is, for the repayment of such deposists of money as may have been made before demand of payment therefor."

It seems to us that the words "all money that may come into its hands" has a stronger future signification than words "may be so deposited," and that it requires a very clear showing of a purpose for which the instrument was required and given contrary to the prospective signification of the language used in these bonds in order to give such language a past or present significance; that is, if we consider only the quoted words standing alone. But, as above shown, these bonds were not only conditioned that the principal (the Bank) "shall safely keep, account for and pay over upon demand by proper authority, all money that may come into its hand by virtue of its acting as said depository," but also adds "and shall in all respects duly and faithfully perform all the duties, obligations and requirements imposed upon it or prescribed by law." To our minds, when the Bank on Oct. 8, 1923, six days after these bonds were given and ac-

cepted, defaulted and declined to pay over the moneys which the Board had deposited with it after its designation as a depository on August 7, it certainly failed to "duly and faithfully perform all the duties, obligations and requirements imposed upon it or prescribed by law," and this default took place after appellee's bonds were given and accepted. We think that the inclusion of this broad and comprehensive language in. the obligation of the bonds, which were drawn by the appellees themselves, cannot be ignored and held to be without significance. Indeed, we think that the inclusion of this clause is sufficient to make the appellees liable under their bonds for the default of the Bank in refusing to repay the deposits of the Board on Oct. 8, 1923, although such deposits may have been made prior to Oct. 2nd, when the bonds were accepted.

Though the Kansas case above cited is perhaps the strongest case in their favor which is cited by appellants, they also cite, in support of the same principle of construction, several cases involving bonds containing somewhat similar clauses, among them being Northern Assurance Company of England v. Hotchkiss, 90 Wis. 415, 63 N. W. 1020; State v. U. S. F. & G. Company, 81 Kans. 660, 106 Pac. 1040; Fields v. United States, 27 App. D. C. 433; *in re* The Luckenback 26 Fed. 870; Overly Special School District v. Haber, 193 Wisc. 403, 214 N. W. 342; (In the last cited case the language is quite similar to that in appellee's bond; the condition of the bond being that the principal (Bank) "shall well and truly account for and pay to said obligee * * * all funds so deposited with it as such depository * * * and shall well and truly perform all other obligations now or hereafter imposed by law") ; Maryland Casualty Company v. Pacific Company, 245 Fed. 831; Carson v. DeWitt County, 23 S. W. 2d, 411; Fidelity and Deposit of Maryland v. Wilkinson County1, 59 So. (Miss.) 865; Southern Surety Com-

pany v. Ruark, 97 Okl. 268, 223 Pacific 622; Hughes County v. Security State Bank, 225 N. W. 298.

Appellants further contend, and we think correctly, that the rule is that it will be presumed, if it was desired or intended by the parties to limit liability to specific funds, or funds thereafter to be deposited and not withdrawn, express language effectuating that purpose would have been incorporated in the obligation; citing Carson v. Dewitt County, 23 S. W. 2d. 411 (Texas Civil Court of Appeals). But appellees say that their bonds did incorporate express langauge to that effect.

In this connection, it is said in the text of 18 C. J. 586 and 587 that:

"The same rules of interpretation and construction apply to the bonds of depositories as to other contracts of a similar nature. Where the language of the bond is unambiguous there is no room for construction. The courts should give effect to the intention of the parties, which should be sought in the language employed in the light of the surrounding circumstances. A bond should be construed to uphold the agreement rather than to render it void, and should be construed as a whole, and, if possible, effect should be given to each clause and word. Changes in punctuation may be made to bring out the true meaning of the bond. Statutory provisions relating to the depositories should be read in connection with the bond, especially where there is express reference thereto. Additional conditions to those provided for by the statute which tend to limit the liability of the surety will be treated as surplusage. A bond referring to the principal contract between the government and the depository is to be construed in connection therewith. As a general rule, the liabilities of sureties cannot be extended by doubtful construction or implication, but a bond executed by a surety

company receiving compensation has been rigidly construed against the company and liberally in favor of the public."

And on pp 587 and 588 of the same work the following appears:

"Ordinarily a bond covers the money already on deposit at the time it becomes effective, and there is generally in legal effect a re-deposit of such money, although the wording of the bond may be such as to preclude this construction, as where it expressly refers to funds which "shall be deposited.' Ordinarily a bond will be held to cover deposits made after its execution."

If the condition contained in these bonds had only been that the Bank "shall safely keep, account for and pay over upon demand by proper authority all money that may come into its hands by virtue of its acting as said depository," and had not added "and shall in all respects duly and faithfully perform all the duties, obligations and requirements imposed upon it or prescribed by law," we might be able to agree with the appellees' contention. The latter clause, just quoted, is so strong and comprehensive that we do not think it can be confined in its meaning as applying only to moneys that might come into the hands of the Bank after the acceptance of the bonds, under the preceding clause, even if such proceding clause should be given a prospective meaning as contended for by appellees.

Our conclusion, therefore, is that, giving due effect to all of the language used in the condition clauses of the bonds, and considering also the allegations of the bill, and of the answers of those defendants claiming affirmative relief, as to the objects and purposes for which the bonds were given and accepted, the pleas filed by the appellees do not present a complete and effective defense to such bill and said answers claiming affirmative relief, and the Court below was in error in its ruling to the contrary.

In their very able brief, counsel for appellees cite the case of Board of County Commissioners v. American Loan and Trust Company, 67 Minn. 112, 69 N. W. 704, which appears to be contrary to the weight of authorities as cited by counsel for appellants. In that case the bond was conditioned, "Shall well and truly pay over on demand, according to law, all of said funds which shall be deposited," etc. The Minnesota statutes provided that surety bonds be delivered and accepted before a depository could be designated. The Court held that the complaint in that case did not sufficiently allege that any designation of the depository had ever been made before the bond was approved, and did not state that any county funds were deposited with such depository after the approval of the bond, and that therefore the complaint failed to state a cause of action. In other words, the Court gave to the language used a prospective meaning. But in the case at bar the county depository statute did not in our opinion, apply to these district bonds, and the recitals of the provisions of the bonds, as contained in the pleas themselves, show that the Board had designated this Bank as a depository on August 7, 1923, which was before the deposits here in question were made. And we think that under Chapter 7414, creating the district, the Board was at least impliedly given the power to do this.

Appellees also contend that our statutes did not authorize the Board to release any bond before its maturity, and take other bonds in place of same. While there may not have been any statute specifically authorizing such procedure, we are inclined to the view that every public corporate body, where not otherwise provided by statute, has inherent and implied power to take such steps as may be necessary or proper for the protection of its deposits in any depository, which we think would include the power of accepting bonds of surety companies as security for such deposits, whether

in substitution for other bonds, or as additional security thereto, as a necessary incident to its powers and duties to protect the public funds. But even if the Board exceeded its authority in a matter of this kind, it is doubtful that either the principal or the surety who executed and tendered such a bond to the Board could be heard to question such authority.

Appellees also cite the case of Mutual Loan & Bldg. Ass'n v. Price, 19 Fla. 127. In that case it was said in the opinion that: "the condition is that he shall honestly and in good faith use as such treasurer during his continuance in said office, and hold and dispose of whatever he may receive as such treasurer, as the Association or its Board of Directors may direct," etc.

In the opinion this Court said that: "the language restricts the obligation to what he will receive and to his future conduct as treasurer." That case unlike this one involved the sureties upon the bond of a treasurer of a private corporation, the sureties being private individuals. The fifth headnote states the question decided, in so far as the same pertains to the contention made, in the following language:

"Sureties upon such bond are not responsible for misappropriations or misapplications of money made anterior to the date of the bond, unless made so in terms clearly involving such liability. Where, however, the evidence shows simply that, at the date of the bond, the difference between collections and disbursements amounted to a certain sum, the presumption is that the money was then in the hands of the officer, the surety is responsible, and to rebut this presumption must show antecedent misapplication."

While somewhat persuasive, we do not regard the case just discussed as exactly in point here.

Appellees also cite Aetna Casualty and Surety Co. *et al.* v.

U. S. F. & G. Company, et al., 11 Fed. (2nd) 102. This was a case wherein the appellees here filed a bill in the Northern District of Florida against the United States Fidelity & Guaranty Company, the receivers of the Bank and this same Board of Bond Trustees to cancel the same two bonds described in their pleas in this case, on the ground of fraud in their procurement, which bill was dismissed on jurisdictional grounds. The decree of dismissal was affirmed. Appellees direct our attention to the concluding sentence of the opinion, which reads: "It further affirmatively appears from the bill that appellants do not need the aid of a court of equity, and that they have a complete defense to any suit the board of trustees might bring against them on account of deposits in the bank made prior to the approval and acceptance of the · bonds upon which they are sureties." Appellants claim that this statement was *obiter dictum*. Whether it be so or not, we think it indicates that the Circuit Court of Appeals thought that appellees' main contention, as made in the case at bar, was well founded. While we have great respect for that Court and its decisions, as well as for the eminent jurist, Circuit Judge Bryan, who wrote the opinion quoted from, we cannot, for the reasons hereinabove stated, follow them in this instance.

It is also argued that the bank, being insolvent, on Oct. 2, 1923, it is not shown that any of the deposits made by the Board were in its hands when appellees' bonds were taken. The answer asking affirmative relief, to which, as well as to the bill, thees pleas were interposed, deny such insolvency, and the pleas do not take issue on that point. There is no allegation in the pleadings of fraud or misrepresentation on the part of the Bank or the Board of Bond Trustees as to the Bank's condition when the bonds were tendered and accepted. Hence we do not deem it necessary to discuss the legal effect of the insolvency *vel non* of the

Bank at that time. Presumably the appellees had made their own investigation of the risk and were informed of the condition of the Bank when they made and tendered their bids.

As to appellees' cross-assignments of error, attacking the action of the court in overruling the demurrer to the Royal Indemnity Company's bill, we need only say that if there was any error in such ruling (which is extermely doubtful; see Glades County v. Detroit Fidelty and Surety Co., 57 Fed. 2nd, 449) we think it was harmless to appellees, because, under the answers of the other defendants praying affirmative relief, to which appellees' pleas were also addressed, the rights and interests of appellees and all other parties to this suit may be determined and adjudicated. Where a cross-bill, or an answer filed under the statute, sets up additional facts relating to the subject matter not alleged in the original bill, founded upon matter of equitable cognizance, and prays for affirmative relief against the plaintiff in the original bill (and, as in this case, against co-defendants, including appellees, also), the dismissal of the original bill does not necessarily carry with it the cross-bill, or the answer in the nature of a cross-bill praying affirmative relief, but it remains for disposition as if it had been an original bill. Ballard v. Kennedy, 34 Fla. 483, 16 So. 327; Spencer v. Spencer, 59 Fla. 608, 52 So. 146; Houston v. Maddox, 53 N. E. 599.

For the errors above pointed out, the order appealed from must be reversed and the cause remanded.

Reversed and remanded.

WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.

DAVIS, C. J., Disqualified.